NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CEVDET AKSÜT VE OĞULLARI KOLL. STI,**<br><br>**Plaintiff,**<br><br>v.<br><br>**ROBIN A. CAVUSOGLU, HINCKLEY ALLEN & SNYDER LLP, CNC WAREHOUSING LLC, MUNEVVER CAVUSOGLU, GULSUN CAVUSOGLU, AHMET HAMDI CAVUSOGLU, CELIL CAVUSOGLU, HUSEYIN T. CAVUSOGLU, AMERICAN PISTACHIO COMMODITY CORP. d/b/a SUNRISE COMMODITIES, GALIP UNSALAN, ANDREW ROSEN, DAVID COTTAM, MORDY DICKER, HGC COMMODITIES CORP., NORTHEAST IMPORTS INC., CNC TRADING DISTRIBUTION AND WAREHOUSING INC., SONA TRADING LTD., LINDEN PACKAGING CORP., EFE SPECIALTY MARKET, INC., EFE INTERNATIONAL, INC., ZEYNO TRUCKING, INC., APC COMMODITY CORP., UNSALAN PETROL DIS TICARET, CELIL ITHALAT ITHRACAT VE TICARET LTD., STI.,**<br><br>**Defendants.** | Civ. No. 14-3362 (WJM)<br><br>**OPINION** |

1

**WILLIAM J. MARTINI, U.S.D.J.**

The Court has already issued an opinion in this case on a motion to dismiss for failure to state a claim that was filed by Sunrise Commodities Corp. and two of its principals (the "Sunrise Opinion"). (ECF No. 69). The Court writes for those familiar with the Sunrise Opinion.

Co-Defendant Mordy Dicker, a former principal of Sunrise, filed this separate Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court applies the same legal standard for a motion to dismiss pursuant to Rule 12(b)(6) that appears in the Sunrise Opinion. For the reasons set forth in the Sunrise Opinion, the Court will grant Dicker's Motion as to the causes of action for aiding and abetting breach of fiduciary duty, aiding and abetting conversion, alter ego liability, and unjust enrichment. The Motion will otherwise be denied.

Dicker was formerly a principal of Sunrise. Dicker's Motion is unique from the Motion of the Sunrise Defendants only in that he claims that he separated from Sunrise in February 2007, well before Cavusoglu defrauded Cevdet Aksüt. With respect to the most serious part of the Complaint, the RICO conspiracy, the separation date is not relevant because the Complaint adequately alleges that Dicker agreed to help the continuation of Cavusoglu's RICO enterprise before Dicker left Sunrise.

Dicker characterizes the RICO enterprise as one devoted solely to hindering Cevdet Aksüt from collecting a judgment. However, this is not an accurate interpretation of the RICO enterprise alleged in the Complaint. The RICO enterprise encompasses many acts and many victims. The essential parts of the RICO enterprise were:

- Cavusoglu misrepresenting his creditworthiness to unsuspecting exporters, who would rely on his misrepresentations and ship goods to his shell companies with the expectation of payment.

- Cavusoglu selling the fraudulently-obtained merchandise to Sunrise well-below market price, permitting Sunrise to make large ill-gotten profits.

- Sunrise financing the litigation brought against Cavusoglu by defrauded exporters as a "cost of doing business" with him.

- Cavusoglu using the litigation as a delay tactic so that he could siphon the ill-gotten proceeds of his sale to Sunrise into other shell companies and personal bank accounts.

- Dumping the shell corporation once a judgment was entered; and

- Re-opening a new shell corporation to being the cycle again.

Dicker's role in a RICO conspiracy is evident from the allegation that Dicker advised Cavusoglu to close CNC "and form another company, get rid of your debts or whatever, so you start fresh and we will keep you supported." (Complaint at ¶ 122). From these allegations, it can be plausibly inferred that Dicker was offering Cavusolgu help to continue defrauding suppliers of Turkish foods so that Sunrise could purchase steeply discounted commodities for resale.

RICO's conspiracy section, 18 U.S.C. § 1962(d) "is to be interpreted in light of the common law of criminal conspiracy and all that is necessary for such a conspiracy is that the conspirators share a common purpose." *Smith v. Berg*, 247 F.3d 532 (3d Cir. 2001). The evil that the RICO conspiracy cause of action seeks to punish is not merely the predicate acts of the RICO enterprise, but the agreement. In *Salinas v. United States*, the United States Supreme Court explained:

> A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor. He may do so in any number of ways short of agreeing to undertake all of the acts necessary for the crime's completion. One can be a conspirator by agreeing to facilitate only some of the acts leading to the substantive offense. It is elementary that a conspiracy may exist and be punished whether or not the substantive crime ensues, for the conspiracy is a distinct evil, dangerous to the public, and so punishable in itself. *See Callanan v. United States,* 364 U.S. 587, 594, 81 S.Ct. 321, 325, 5 L.Ed.2d 312 (1961). It makes no difference that the substantive offense under § 1962(c) requires two or more predicate acts. The [text of the RICO statute] does not permit us to excuse from the reach of the conspiracy provision an actor who does not himself commit or agree to commit the two or more predicate acts requisite to the underlying offense.

522 U.S. 52, 65 (1997).

Paragraph 122 of the Complaint quite specifically places Dicker in the role of RICO conspirator, encouraging Cavusoglu to fraudulently dump an insolvent shell company and found a new one, unencumbered by judgments and capable of defrauding more exporters. Even if Cevdet Aksüt was not a specific, identified victim of the conspiracy in 2006, victims like Cevdet Aksüt were. The illicit agreement to do harm had been made, and that agreement proximately resulted in Cevdet Aksüt's loss three years later.

If Dicker did indeed leave Sunrise in 2007, it could result in dismissal of some of the other claims, for example the UFTA claim and some of the aiding and abetting fraud claims; however, the Court cannot make those conclusions on a motion to dismiss. The date of Dicker's separation is a matter outside the bounds of the Complaint, and therefore, any cause of action that might fail based upon Dicker's alleged 2007 separation date would have to be decided on a motion for summary judgment. *See JM Mech. Corp. v. U.S. by U.S. Dep't of Hous. & Urban Dev.*, 716 F.2d 190, 197 (3d Cir. 1983).

For the reasons set forth above, Mordy Dicker's Motion to Dismiss is denied, except with respect to those causes of action specified above. An appropriate order follows.

/s/ William J. Martini
_____
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: July 14, 2015**