NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CEVDET AKSÜT VE OĞULLARI KOLL. STI,**<br><br>**Plaintiff,**<br><br>v.<br><br>**ROBIN A. CAVUSOGLU, HINCKLEY ALLEN & SNYDER LLP, CNC WAREHOUSING LLC, MUNEVVER CAVUSOGLU, GULSUN CAVUSOGLU, AHMET HAMDI CAVUSOGLU, CELIL CAVUSOGLU, HUSEYIN T. CAVUSOGLU, AMERICAN PISTACHIO COMMODITY CORP. d/b/a SUNRISE COMMODITIES, GALIP UNSALAN, ANDREW ROSEN, DAVID COTTAM, MORDY DICKER, HGC COMMODITIES CORP., NORTHEAST IMPORTS INC., CNC TRADING DISTRIBUTION AND WAREHOUSING INC., SONA TRADING LTD., LINDEN PACKAGING CORP., EFE SPECIALTY MARKET, INC., EFE INTERNATIONAL, INC., ZEYNO TRUCKING, INC., APC COMMODITY CORP., UNSALAN PETROL DIS TICARET, CELIL ITHALAT ITHRACAT VE TICARET LTD., STI.,**<br><br>**Defendants.** | Civ. No. 14-3362 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.**

Co-Defendant Hinckley Allen & Snyder, LLP ("Hinckley Allen") filed this Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Motion is granted in part and denied in part.

The Court has already issued an Opinion in this case on a Motion to Dismiss for failure to state a claim that was filed by Sunrise Commodities Corp. and two of its principals (the "Sunrise Opinion"). (ECF No. 69). It also issued an Opinion on a Motion to Dismiss for failure to state a claim that was filed by Mordy Dicker (the "Dicker Opinion") (ECF No. 71). The Court writes for those familiar with these two Opinions and hereby relies upon and incorporates all recitations of law and legal standards appearing in those Opinions.

## I. BACKGROUND

Hinckley Allen is a law firm that provided advice and counsel to Cavusoglu and Cavusoglu Entities on many matters in the past, including the settlement of *Cevdet Aksut I*. (Complaint at ¶¶ 100, 114). The Complaint alleges that Hinckley Allen is liable for several acts committed in the course of serving as Cavusoglu's counsel. For the purposes of this Motion, however, only one of those acts matters: Hinckley Allen's participation in the Sunrise Settlement and the Sunrise Transfer. Hinckley Allen was the drafter of the Sunrise Agreement and the escrow agent for the Sunrise Transfer. (Complaint at ¶¶ 202- 203). The Complaint alleges that Hinckley Allen wired a total of $500,000 to Celil and CNC, knowing that Celil and CNC were inactive shell corporations and that, in reality, the money was going directly to the Cavusoglus. (Complaint at ¶¶ 205-206).

Hinckley Allen is implicated in the following Counts of the Complaint:

- **Count 2**: Uniform Fraudulent Transfer Act, N.J.S.A. 25:2-20
- **Count 4**: State RICO, N.J.S.A. 2C:41-1, *et seq.*
- **Count 6**: Aiding and Abetting Conversion
- **Count 7**: Aiding and Abetting Breach of Fiduciary Duty
- **Count 8:** Aiding and Abetting Fraud
- **Count 9**: Civil Conspiracy
- **Count 11**: Unjust Enrichment

## II. DISCUSSION

### A. The *Noerr-Pennington* Doctrine Defense

Hinckley Allen opens its legal argument with an invocation of the First Amendment immunity known as the *Noerr-Pennington* Doctrine. The *Noerr-Pennington* Doctrine is irrelevant to the facts of this case. The *Noerr-Pennington* Doctrine applies mostly to anti-trust cases. *See City of Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. 365, 380 (1991); *Mariana v. Fisher*, 338 F.3d 189, 198 (3d Cir. 2003). The *Noerr-Pennington* Doctrine is the principle that a party cannot be liable for damages "caused by inducing legislative, administrative, or judicial action." *Brownsville Golden Age Nursing Home, Inc. v. Wells*, 839 F.2d 155, 160 (3d Cir. 1988). The core of the *Noerr-Pennington* Doctrine is the protection of First Amendment rights to petition the government for a redress of grievances. *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1123 (D.C. Cir. 2009). Hinckley Allen's representation of Cavusoglu does not in any way touch upon the right to petition the government.

### B. Conspiracy to Violate the Uniform Fraudulent Transfer Act

The New Jersey Supreme Court specifically held that a debtor's lawyer can be liable for conspiracy to violate the UFTA. *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 178 (2005). In *Gandi*, the New Jersey Supreme Court found that the creditor/plaintiff had stated a UFTA claim against the debtor's lawyer, Richard Freedman, by alleging that Freedman had encouraged and helped Gandi to transfer assets to Gandi's wife in order to keep the assets away from the creditor. *Id.* at 178. ("The allegations indicate that Freedman counseled [his client] to transfer his assets to defraud a creditor, and, if proved, [Freedman's] assistance in facilitating the transfer reflects implicit, if not explicit, agreement to further that purpose.").

This Complaint alleges facts which, if proven, reflect Hinckley Allen's implicit or explicit agreement to hinder Cevdet Aksut's efforts to collect the *Cevdet Aksut I* Judgment. Because Hinckley Allen was counsel to HGC and Cavusoglu in *Cevdet Aksut I*, Hinckley Allen plausibly knew that HGC had an obligation to satisfy that judgment with whatever assets it had.

HGC was also a party to the Sunrise Settlement. Therefore, the Court can plausibly infer that HGC had certain claims against Sunrise. These claims could plausibly be classified as assets rightly belonging to Plaintiff. Hinckley Allen plausibly knew all this to be true due to its relationship with HGC.

Moreover, Hinckley Allen plausibly knew that HGC's legal obligation to pay the *Cevdet Aksut I* Judgment made HGC's interests in the Sunrise Settlement adverse to Cavusoglu's personal interests in the Sunrise Settlement. In its role as drafter of the Sunrise Settlement Agreement and escrow agent of the Sunrise Transfer, Hinckley Allen purposely fashioned a financial arrangement that preferred Cavusoglu's personal interests above those of HGC's legal obligation to pay the *Cevdet Aksut I* Judgment. As the escrow agent, Hinckley Allen directly participated in the funneling of HGC's rightful interest in the settlement proceeds away from HGC. The Sunrise Settlement / Transfer demonstrates purposeful disregard for HGC's obligations. Thus the facts alleged in the Complaint about the Sunrise Settlement and the Sunrise Transfer sufficiently state a claim against Hinckley Allen for conspiracy to violate the UFTA.

Hinckley Allen argues that the UFTA conspiracy and general civil conspiracy claims should be dismissed as implausible. Specifically, Hinckley Allen argues that its knowledge that the Sunrise Transfer was designed to hinder creditors does not plausibly lead to the inference that it agreed to facilitate a fraud. This argument is not persuasive. Hinckley Allen cites no legal authority for the proposition that agreement cannot be inferred from knowledge of wrongdoing. Moreover, Hinckley Allen's unsupported position runs contrary to *Gandi*, where the New Jersey Supreme Court held that a lawyer who advises a client on methods of hindering creditors has committed conspiracy to violate the UFTA. 184 N.J. at 178 (stating that lawyer's "assistance in facilitating the transfer reflects implicit, if not explicit, agreement to further [a fraudulent] purpose.").

### C. RICO

Hinckley Allen makes three arguments for dismissal of the RICO cause of action: (1) the RICO claim fails to allege two "predicate acts" necessary to establish a RICO violation; (2) the RICO claim is not pled with specificity as required by Rule 9(b); (3) Plaintiff lacks RICO standing. None of these arguments are persuasive.

In order to establish a RICO violation, the Plaintiff must allege at least two "predicate acts" within a ten-year period. *See* N.J.S.A. 2C:41-1; *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 915 (3d Cir. 1991); *State v. Ball*, 141 N.J. 142, 180 (1995). "Predicate acts" are those appearing on a list of crimes at N.J.S.A. 2C:41-1a. *See State v. Ball*, 141 N.J. 142, 163-64 (1995). Wire fraud (18 U.S.C. § 1343), mail fraud (18 U.S.C. § 1341), and money laundering (18 U.S.C. §1956) are all predicate acts. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 479 (1985); *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 543-54 (3d Cir. 2012).

The Complaint is rife with examples of mail fraud, wire fraud, and money laundering. For example, Cavusoglu committed wire fraud when he used the telephone to communicate with Cevdet Aksut to make his fraudulent misrepresentations. He committed money laundering when he transferred the proceeds from the sale of the goods to various shell corporations. The Complaint even places Hinckley Allen on notice that it perpetrated either wire or mail fraud by accepting the Sunrise Transfer as an escrow agent and then transferring it into the CNC and Celil bank accounts.

The Complaint in no way fails to be specific about Hinckley Allen's role in the RICO enterprise. The Complaint therefore complies with Rule 9(b).

Hinckley Allen's argument that the Complaint fails to establish the proximate causation element of RICO standing is also unpersuasive. Hinckley Allen's participation in the Sunrise Settlement / Transfer proximately caused Plaintiff's damages.

### D. Other Causes of Action

Hinckley Allen argues that the causes of action for aiding and abetting breach of fiduciary duty, aiding and abetting conversion, and unjust enrichment should be dismissed. The Court will dismiss those causes of action for the same reasons it dismissed those Counts of the Complaint against the Sunrise Defendants and Mordy Dicker. (*See* Sunrise Opinion and Dicker Opinion). Hinckley Allen makes no argument for dismissal of the aiding and abetting fraud cause of action, and the facts alleged in the Complaint do not warrant dismissal of this Count of the Complaint.

### III.   CONCLUSION

For the reasons set forth above, Hinckley Allen's Motion to Dismiss is granted in part and denied in part. The causes of action for aiding and abetting breach of fiduciary duty, aiding and abetting conversion, and unjust enrichment are dismissed. An appropriate order follows.

/s/ William J. Martini
_____
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: July 14, 2015**