UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CEVDET AKSÜT OĞULLARI KOLL. STI, <br><br> Plaintiff, <br><br> v. <br><br> ROBIN A. CAVUSOGLU, *et al.*, <br><br> Defendants. | Civ. No. 2:14-3362 <br><br> **OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Cevdet Aksüt Oğullari Koll. Sti ("Plaintiff") brings this action against Huseyin Cavusoglu and multiple associates, including American Pistachio Commodities Corporation d/b/a Sunrise Commodities, David Cottam, and Andrew Rosen (collectively "Sunrise Defendants" or "Sunrise"), and Mordy Dicker, alleging thirteen counts of New Jersey, federal and common law violations, in connection with the fraudulent importation of food products from Turkey to the United States. This matter comes before the Court on Sunrise Defendants' partial motion to dismiss under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings with respect to Counts IV and V of the Complaint. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Defendants' motion to dismiss is **GRANTED** and Counts IV and V are **DISMISSED**.

I. BACKGROUND

In general, the Complaint alleges that Sunrise Defendants, Dicker and others conspired with Cavusoglu in operating a fraudulent enterprise that induced Turkish food suppliers to ship their goods to Defendants for sale in the United States (the "RICO enterprise"). Plaintiff seeks to collect an unpaid debt of approximately $1.1 million in connection with its business dealings with the RICO enterprise. The Court assumes the parties' familiarity with the facts of this case, which are summarized in two opinions addressing previous motions to dismiss filed by Sunrise and Dicker. *See* Op. 3–8, ECF No. 69; Op. 2–3, ECF No. 71.

The Court underscores a few facts that are particularly relevant to the instant motion. Plaintiff is a Turkish corporation with its principal place of business in Nazilli, Turkey. Compl. ¶ 5, ECF No. 1. Sunrise Defendants and Dicker are residents of the United States. *Id*. at ¶¶ 30, 33, 35, 37. Cavusoglu is also a United States resident and operated several shell corporations in connection with the alleged RICO enterprise out of Linden, New

Jersey.  *See id.* at ¶¶ 6, 39–40.  Cavusoglu coordinated with Sunrise and Dicker to have Plaintiff's goods stored at the Linden property.  *See id.* at ¶¶ 69–83, 90–95, 147–56.

Plaintiff was first introduced to Cavusoglu through an individual named Aret Museoglu, who was a representative of Plaintiff's previous customer.  Museoglu recommended Cavusoglu as a business partner, representing that he was a "big player" in the Turkish-food-import business.  *Id.* at ¶ 137.  After Plaintiff had delivered most of its goods, Museoglu recanted his previous statements and admitted that he knew Cavusoglu to be dishonest and that he took unfair advantage of his suppliers.  *See id.* at ¶ 157.  In return for kickbacks from the sale of Plaintiff's goods, Museoglu conspired with Cavusoglu to induce Plaintiff to transact with the RICO enterprise by making false representations about Cavusoglu's personal integrity, intentions, market share, customer base and past acts.  *See id.* at ¶¶ 158, 160.  Finally, the record reflects that Plaintiff's invoices concerning some, but not necessarily all, of the shipped goods indicate "FOB.IZMIR."  *See id.*, Ex. 15.

Sunrise now moves to dismiss only Counts IV and V of the Complaint, which allege violations of the New Jersey Racketeer Influenced Corrupt Organizations ("RICO") Act, N.J.S.A. § 2C:41-1 *et seq.*, and the United States RICO Act, 18 U.S.C. § 1961 *et seq.*, (collectively the "RICO claims").  *See* Compl. at ¶¶ 276–94; Br. in Supp. of Mot. to Dismiss Pl.'s RICO Claims ("Defs.' Mot.") 1, ECF No. 126-1.  Dicker joins the motion.  *See* Letter, ECF No. 127.  Sunrise argues that, in light of the Supreme Court's recent ruling in *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090 (2016), Plaintiff's RICO claims fail as a matter of law because Plaintiff cannot show that it suffered a "domestic injury" to its business or property.  *See* Defs.' Mot. at 3.  In applying a legal test adopted by the Southern District of New York, Sunrise asserts that any injury to Plaintiff occurred in Turkey because Plaintiff maintained no business operations in the United States and Plaintiff relinquished possession of its goods when it delivered them to a third-party shipper in Turkey.  *See id.* at 10–12.

Plaintiff responds that the *RJR* decision is distinguishable because all of the alleged RICO predicate acts in *RJR* occurred in Europe, whereas all of the predicate acts in the instant case occurred in the United States.  *See* Pl.'s Br. in Opp'n to the Mot. to Dismiss ("Pl.'s Opp'n") 6–7, ECF No. 134.  Furthermore, the *RJR* plaintiffs waived their damages claims to domestic injuries.  *Id.*  Second, Plaintiff argues that its domestic property was injured because of losses it incurred as a result of its inability to satisfy a judgment that it obtained in 2011 against an entity connected to the RICO enterprise.  *See id.* at 7–10.  Third, in applying a different test established by the Central District of California, Plaintiff argues that this Court should look to where nearly all of the unlawful conduct took place—*i.e.*, the United States—in determining where the economic injury occurred.  *See id.* at 13–15.  Finally, Plaintiff asserts that its domestic business was injured because it had approximately $1 million of annual sales to customers in the United States prior to transacting with the RICO enterprise.  *See id.* at 16.

In its reply, Sunrise counters that the case upon which Plaintiff relies is an outlier from the multitude of other district court decisions applying the *RJR* holding and is

otherwise distinguishable from the instant case because the plaintiff in that case maintained substantial business operations within the United States. *See* Reply Br. in Further Supp. of Mot. to Dismiss Pl.'s RICO Claims ("Defs.' Reply") 4–8, ECF No. 135. Sunrise argues that Plaintiff's claim of damage to its domestic business fails because it never maintained any business operations within the United States and, therefore, cannot allege damage to a United States-based business operation. *See id*. at 9–10. Sunrise further argues that Plaintiff's claim of damage to its judgment as property fails because it is a "downstream effect" of Plaintiff's initial injury. *See id*. at 12. Moreover, Plaintiff's judgment concerns only one transaction between Sunrise and Cavusoglu, which does not satisfy a pattern of racketeering as required by law, and Plaintiff's "lost-debt" theory of damages is not yet cognizable before the Court. *See id*. at 13–15. Dicker joins Sunrise's arguments in reply and further asserts that any RICO claim against him fails because he has had no relationship or involvement with any of the parties since 2007. *See* Letter, ECF No. 136. Sunrise notes, and Plaintiff does not contest, that the New Jersey RICO statute is nearly identical to the federal RICO statute. *See* Defs.' Mot. at 3 n.2. The Court, therefore, will consider both claims together.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(c), judgment on the pleadings will be granted only if "the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law." *Sikirica v. Nationwide Insurance Co.*, 416 F.3d 214, 220 (3d Cir. 2005). The court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Id.* In deciding a motion for judgment on the pleadings, the court "considers only the complaint, any attached exhibits, documents relied upon in the complaint, matters of public record, and any indisputably authentic documents." *See Hlista v. Safeguard Props., LLC*, 649 F. App'x 217, 218 n.2 (3d Cir. 2016) (quotation and citations omitted).

## III. DISCUSSION

The critical question before the Court is whether a foreign corporation, with its principal place of business located in a foreign country, can allege a "domestic injury" under RICO civil liability for predicate acts committed by U.S. residents while located in the United States. Before answering that question, the Court will first address the Supreme Court's analysis of RICO civil liability, which established that a RICO civil plaintiff must allege a "domestic injury." The Court will next consider decisions issued by various district courts in the aftermath of the *RJR* decision, including those brought to the fore by the parties' papers.

### A. The Domestic Injury Requirement

RICO civil liability creates a cause of action for "[a]ny person injured in his business or property" as a consequence of RICO predicate acts. *See* 18 U.S.C. § 1964(c). In *RJR*, the Supreme Court addressed whether the civil cause of action applied extraterritorially—*i.e.*, "to events occurring and injuries suffered outside the United States." *See* 136 S. Ct. at

2096. The case concerned an American cigarette manufacturer's involvement in a scheme where organized crime syndicates smuggled narcotics into Europe, the proceeds of which were used to pay for large shipments of the manufacturer's cigarettes into Europe. *See id*. at 2098; *see also European Cmty. v. RJR Nabisco, Inc.*, No. 02-cv-5771, 2011 WL 843957, at *1–2 (E.D.N.Y. Mar. 8, 2011). The complaint alleged a pattern of racketeering undertaken by the manufacturer, which consisted of money laundering, mail fraud, wire fraud and other RICO predicate acts. *See* 136 S. Ct. at 2098. Plaintiffs, the European Community and 26 of its member states, claimed that they were harmed by the manufacturer's predicate acts in the form of "competitive harm to their state-owned cigarette businesses, lost tax revenue from black-market cigarette sales, harm to European financial institutions, currency instability, and increased law enforcement costs." *See id*.

The Supreme Court was confronted with two questions: (1) whether RICO's substantive prohibitions under § 1962 applied to conduct that occurred in foreign countries; and (2) whether RICO's private right of action under § 1964(c) applied to injuries suffered in foreign countries. *Id*. at 2099. The Court articulated a two-step inquiry in analyzing issues of extraterritoriality. First, courts must determine whether the statute in question "gives a clear, affirmative indication that it applies extraterritorially." If not, then courts must determine whether the case at bar involves "a domestic application of the statute," which is determined by the statute's "focus" and where the relevant conduct of that focus occurred. If the relevant conduct occurred in the United States, "then the case involves a permissible domestic application" of the statute; however, if the relevant conduct occurred in a foreign country, "then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory." *See id*. at 2101.

In answering the second question, the Court held that § 1964(c) did not overcome the presumption against extraterritoriality regardless of whether the alleged predicate acts under § 1962 applied extraterritorially. *See id*. at 2106. Consequently, a private RICO plaintiff "must allege and prove a *domestic* injury to its business or property." *Id*. (emphasis original). The Court acknowledged the potential for "international friction" if RICO civil liability allowed recovery for foreign injuries in U.S. courts, including treble damages, which might exceed recovery in foreign states. *See id*. at 2106–08. In applying the first step of its inquiry, the Court found that "[n]othing in § 1964(c) provides a clear indication that Congress intended to create a private right of action for injuries suffered outside of the United States." *Id*. at 2108. The Court declined to apply the second step, however, because the plaintiffs waived their damages claims for domestic injuries at the district court level. *See id*. at 2111. Consequently, the Supreme Court never addressed the issue present now: whether a foreign corporation with no substantial business operations in the United States can nevertheless allege a domestic injury under § 1964(c) for predicate acts committed by U.S. residents that occurred within the United States. Indeed, as the Court presciently counseled, "[t]he application of this rule in any given case will not always be self-evident, as disputes may arise as to whether a particular alleged injury is 'foreign' or 'domestic.'" *Id*.

4

## B. District Courts' Applications of the Domestic Injury Requirement

Several district courts have considered the meaning of "domestic injury" in light of the Supreme Court's *RJR* decision. As the parties' papers indicate, two separate, and apparently conflicting, lines of reasoning have emerged from these opinions. The first line, for which Sunrise advocates, focuses on where the alleged injury was suffered. The second line, for which Plaintiff advocates, focuses on where the conduct occurred that caused the injury. Obviously, the outcome of the present dispute hinges on the prevailing line of reasoning, which the Court will now consider.

In *Elsevier, Inc. v. Grossman*, the Southern District of New York ("SDNY") considered the domestic injury question where plaintiffs, who were publishing companies based in Amsterdam, Paris, London and New York, alleged RICO claims related to the fraudulent conduct of defendant, who was a Brazilian citizen and resident. 199 F. Supp. 3d 768, 774 (S.D.N.Y. 2016). Plaintiffs alleged that defendant defrauded them by acquiring journal subscriptions at a discounted rate for individual readers and then forwarding those subscriptions to Brazilian institutions, which were not eligible for the discounted rate. *Id*. at 775. In service of the scheme, defendant established a New York corporation and bank account, which he used to pay plaintiffs. Defendant also maintained a New York residence where some of the subscriptions were sent. *Id*. at 774–75. Despite committing a substantial amount of conduct relevant to the mail fraud statute's "focus" in the United States, the court determined that defendant could not be civilly liable under § 1964(c). Plaintiffs alleged injuries to their businesses and properties. In general, the court determined that business injuries occur where substantial negative business consequences are felt and that property injuries occur where plaintiffs parted with their property or where the property was damaged. *See id*. at 786. The court reasoned that plaintiffs' business injuries were not domestic because defendant's conduct only affected plaintiffs' relationships with Brazilian institutions and had no impact on plaintiffs' U.S. customers. *See id*. at 787–88. Plaintiffs' property injuries were not domestic because plaintiffs released control of their property in the Netherlands, which was where they shipped journals to the United States and Brazil. *See id*. at 788–89.

A month later, in *Bascuñan v. Elsaca*, the SDNY applied similar reasoning where the individual plaintiff and defendants were Chilean citizens and residents, and corporate plaintiffs and defendants were incorporated in either Chile or the British Virgin Islands. No. 15-cv-2009, 2016 WL 5475998, at *1 (S.D.N.Y. Sept. 28, 2016). The court analogized § 1964(c) to New York's choice-of-law statute, which provides that an economic injury accrues where the injured party resides. A business's residence is either its place of incorporation or its principal place of business. *See id*. at *4. Thus, plaintiffs' injuries were not domestic because their businesses were incorporated abroad and they had no business operations in the United States. *See id*. at *5–6. The court did not distinguish between business and property injuries.

In *Tatung Co., Ltd. v. Hsu*, the Central District of California departed from the SDNY and applied the second line of reasoning, which focused on where the RICO

5

predicate acts occurred that caused the alleged harm. *See* No. 13-cv-1743, 2016 WL 6683201, at *5–8 (C.D. Cal. Nov. 14, 2016). Plaintiff was a foreign corporation and defendants were mainly U.S. citizens and residents. *See id*. at *7. Plaintiff maintained a "hub" of business in the United States, and extended credit and delivered goods to one of the defendants within the United States.[1] When defendant defaulted on its credit obligation, Plaintiff was awarded a judgment through arbitration, which proceeded in California pursuant to a contractual agreement. Plaintiff subsequently alleged a RICO conspiracy between defendant and many others to fraudulently siphon funds from defendant's corporation and render it an empty shell, in avoidance of the judgment. *See id*. The court found that RICO civil liability was appropriate because "the defendants specifically targeted their conduct at California with the aim of thwarting [plaintiff's] rights in California" and that "[i]t would be absurd to find that such activity did not result in a domestic injury to [p]laintiff." *See id*. at *8. The court declined to follow "the *Bascuñan* rule" because it amounted to "immunity for U.S. corporations who, acting entirely in the United States, violate civil RICO at the expense of foreign corporations doing business in this country." *See id*. at *7. "It is ludicrous to think that a foreign individual could not sue under civil RICO for financial injuries incurred while they are working, traveling, or doing business in this country as the result of an American RICO operation." *Id*.

Other courts have considered the "domestic injury" question under varying circumstances, but most of them did not focus on where the RICO predicate acts occurred; rather, most of the courts appear to have focused on where plaintiffs' injuries were felt. *See, e.g.*, *Absolute Activist Value Fund Ltd. v. Devine*, No. 15-cv-328, 2017 WL 519066, at *19–20 (M.D. Fl. Feb. 8, 2017) (finding that foreign corporate plaintiffs suffered their economic injuries where they were located, not where the RICO predicate acts occurred); *City of Almaty, Kazakhstan v. Ablyazov*, No. 15-cv-5345, 2016 WL 7756629, at *9 (S.D.N.Y. Dec. 23, 2016) (sharing in the *Tatung* court's hesitation to apply a blanket rule but nevertheless finding that foreign plaintiffs did not suffer a domestic injury because they did not hold assets, maintain business operations or have any other presence in the United States); *Exeed Indus., Inc. v. Younis*, No. , 2016 WL 6599949, at *3 (N.D. Ill. Nov. 8, 2016) (finding that foreign plaintiffs did not suffer a domestic injury despite the fact that the illegally obtained funds were used to purchase land in the United States).

Notably, however, a sister court in this district looked to where defendant's conduct occurred. *See Akishev v. Kapustin*, No. 13-cv-7152, 2016 WL 7165714, at *5–8 (D.N.J. Dec. 8, 2016). In *Akishev*, plaintiffs were citizens of multiple foreign countries that were induced to purchase used cars from defendant's dealership, which was based in Pennsylvania and New Jersey. *See id*. at *7. Plaintiffs were induced to purchase the cars through defendant's misrepresentations on its United States-based website. *See id*. The court reasoned: "If plaintiffs traveled to the United States, went to the physical location of

---

[1] Exhibits filed in connection with defendants' motion for summary judgment in *Tatung* indicated that plaintiff maintained warehouses where it stored inventory in El Paso, Texas, and Los Angeles, California, to which it referred as the "El Paso HUB" and "Los Angeles HUB." *See* Decl. of Gopi K. Panchapakesan in Supp. of Bird Marella Defs.' Opp'n to Tatung's Mot. for Partial Summ. J. 89, 233, ECF No. 793-2.

[defendant's] purported car dealerships . . . , chose a car, paid for it on the spot, and arranged for the car to be shipped to Eastern Europe, plaintiffs would have suffered from a clear domestic injury when [defendant] failed to deliver the car and failed to return plaintiffs their money." *Id*. Thus, RICO civil liability should not be precluded simply because foreign plaintiffs were fraudulently induced to make purchases over the internet instead of in person. *See id*. at *8. In its reasoning, the court appeared to focus on where plaintiffs' injuries were felt—*i.e.*, on defendant's United States-based website and, therefore, in the United States. Nonetheless, in finding that plaintiffs suffered a domestic injury, the court concluded that "the extraterritoriality analysis should be a two-way street" and that "[t]he locus delecti of the crimes committed is the United States." *See id*.

These cases exhibit a wide array of factual scenarios and justifiable reasoning, with no clear victor in the "domestic injury" debate. What is clear from the statute and the Supreme Court is that the "focus" of § 1964(c) is the injury suffered and not the predicate acts that caused the injury. *See RJR*, 136 S. Ct. at 2108 ("the presumption against extraterritoriality must be applied separately to both RICO's substantive prohibitions and its private right of action"); *see also Ablyazov*, 2016 WL 7756629, at *6 ("*RJR Nabisco* makes clear that 'domestic injury to business or property' is an *independent* requirement for bringing a private RICO action—separate and apart from the requirement of a substantive RICO violation that is either domestic or permissibly extraterritorial—and, as such, the existence of such an injury cannot, as a matter of logic, turn entirely on whether it was caused by conduct occurring in the U.S.") (emphasis original). The Court, therefore, concludes that the only relevant inquiry is where Plaintiff's injury occurred—*i.e.* where the impact of Plaintiff's injury was felt—and not where the predicate acts occurred. In light of this understanding, the Court will now apply the facts before it.

### C. Plaintiff Cannot Allege a Domestic Injury to Its Property

Plaintiff first alleges damage to its property in the form of its $1.12 million judgment against Cavusoglu in a previous case. Plaintiff argues that a judgment is domestic property under § 1964(c) and that Plaintiff "has suffered actual monetary loss and out-of-pocket loss since its 2010 lawsuit claims became, as a matter of law, 'property' upon the entry of judgment against [Cavusoglu's shell entity] in July 2011." *See* Pl.'s Opp'n at 7–10. It is well settled that all claims sounding in fraud, including RICO claims, must be alleged with particularity. *See* Fed. R. Civ. P. 9(b); *Lum v. Bank of Am.*, 361 F.3d 217, 220 (3d Cir. 2004), *abrogated in part on other grounds by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Plaintiff alleges that Sunrise conspired with Cavusoglu to avoid payment of Plaintiff's judgment by engaging in fraudulent litigation, which resulted in the execution of a fraudulent settlement agreement of $500,000 in December 2012. *See* Pl.'s RICO Case Statement 5, ECF No. 113. Plaintiff also broadly alleges that Sunrise and Cavusoglu used litigation as a means of delaying, hindering and defrauding their customers, in connection with the greater RICO enterprise. *See id*. at 7–8.

The original subject of the RICO enterprise's fraudulent scheme was Plaintiff's food products and the initial injury was the fraudulent conversion thereof. To be clear, the Court

7

agrees that judgments are generally considered to be property, but that does not mean that they constitute the type of property that may be subject to recovery under § 1964(c) in all cases. Here, the judgment is a byproduct of Plaintiff's attempt to remedy its initial injury. In other words, the judgment is a "downstream effect of the initial injury" and it does not constitute damage to Plaintiff's business or property under § 1964(c). *See Exeed Indus.*, 2016 WL 6599949, at *3.

Furthermore, the Court agrees with Sunrise that Plaintiff's "lost-debt" theory of out-of-pocket loss is not presently cognizable given Plaintiff's ongoing attempt to satisfy its judgment through the instant litigation. Plaintiff cannot currently show that its debt cannot be collected. Consequently, it cannot show a concrete financial loss, which RICO law requires for recovery. *See Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000) ("Thus, 'a showing of injury requires proof of a concrete financial loss and not mere injury to a valuable intangible property interest.'" (quoting *Steele v. Hospital Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994)). Plaintiff, therefore, cannot presently sustain a claim of damage to its judgment as domestic property.

Plaintiff's second claim of domestic property damage is naturally the fraudulent conversion of its food products. Plaintiff asserts that it remained the lawful owner of its goods until its bank released the bill of lading to Cavusoglu's bank and the goods were unloaded at a port in the United States. *See* Decl. of Oguz Kanyilmaz ("Kanyilmaz Decl.") ¶¶ 4–6, ECF No. 134-2. As a result, Plaintiff argues that its injuries began to accrue in the United States and thus the fraudulent conversion is a domestic injury. *See id.* at ¶ 7.

The Court finds the *Elsevier* court's test to be more persuasive in determining the situs of Plaintiff's injury—*i.e.*, the situs of injury is where Plaintiff physically parted with the property in reliance of Cavusoglu's statements. *See Elsevier*, 199 F. Supp. 3d at 786. It is indisputable that Plaintiff relinquished physical control of its property when it delivered the goods to the third-party carrier in Izmir for delivery to the United States. Plaintiff, therefore, suffered its injury upon delivery to the carrier in Izmir. *See id.* at 789 (finding that goods left plaintiff's control at the point of shipment with a third-party carrier).

Furthermore, the Court is skeptical of Plaintiff's claim that the presence of "FOB" on its invoices is meaningless with respect to where it released control of the goods. *See* Kanyilmaz Decl. at ¶ 4. As the parties are undoubtedly aware, "FOB" is an acronym for "free on board," which is a contractual term that generally presumes that the property passes from seller to buyer at the point indicated. *See Swift Canadian Co. v. Banet*, 224 F.2d 36, 38 (3d Cir. 1955). Here, the invoices in the record clearly indicate "FOB.IZMIR," which presumes that the property passed from Plaintiff to Cavusoglu at the point of shipment in Izmir, Turkey. *See* Compl., Ex. 15. In New Jersey, the meaning of this phrase indicates that the risk of loss passed to Cavusoglu after Plaintiff delivered its goods to the third-party carrier in Izmir. *See* N.J.S.A. § 12A:2–319(1)(a). If Plaintiff did not intend for the risk of loss to pass upon delivery to the carrier, then it could have chosen the receiving port in New Jersey or the Linden property instead. While not dispositive in and of itself,

the Court regards the presence of "FOB.IZMIR" on Plaintiff's invoices as supportive of the fact that Plaintiff relinquished control of its property in Turkey. The Court concludes that Plaintiff cannot allege a domestic injury to its property under § 1964(c).

### D.  Plaintiff Cannot Allege a Domestic Injury to Its Business

Plaintiff argues, without pointing to any evidence in the record, that the damage to its business caused by the RICO enterprise is a domestic injury. Plaintiff claims that it maintained approximately $1 million of annual business for four years prior to its dealings with Cavusoglu and Sunrise. *See* Pl.'s Opp'n at 16. Plaintiff cites to a trial transcript from a previous case as support, apparently unaware of the limits placed on this Court by Rule 12(c). *See Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 257 (3d Cir. 2004) ("In deciding a Rule 12(c) motion, the court does not consider matters outside the pleadings."). Consequently, the Court finds that there is no evidence in the record to support Plaintiff's claim of a domestic injury to its business.

Even assuming that Plaintiff can establish its previous business earnings at summary judgment, the Court finds that Plaintiff cannot allege a domestic injury to its business because its business is entirely located in and operated out of Turkey. Plaintiff would have this Court employ the *Tatung* court's reasoning in looking to where the RICO predicate acts occurred to determine that it suffered a domestic injury. *See* Pl.'s Opp'n at 10–11. Plaintiff's reliance on *Tatung* is misguided. In *Tatung*, plaintiffs clearly maintained substantial business operations within the United States and contractually availed themselves to dispute resolution via arbitration within the United States. *See Tatung*, 2016 WL 6683201, at *7. Accordingly, plaintiff could plausibly argue that its *United States-based business* was harmed by defendants' RICO conduct and that it, therefore, suffered a domestic injury because it felt the impact of that injury within the United States. *See Ablyazov*, 2016 WL 7756629, at *9 (distinguishing *Tatung* from the facts before that court by noting that plaintiffs did not maintain a presence in the United States).

In the instant case, Plaintiff never maintained any operations, instrumentalities or other presence in the United States. *See id.* Furthermore, Plaintiff never "traveled" through the internet to Defendants' United States-based website, as was the case in *Akishev*. *See Akishev*, 2016 WL 7165714, at *7–8. Indeed, it appears to the Court that the initial act of fraud, which caused Plaintiff to rely on Cavusoglu, was committed by Museoglu, who is mysteriously not a named defendant in this case. *See* Compl. at ¶¶ 137, 157–60. Neither party addresses this fact in their papers and the Complaint does not make clear where Museoglu was when he convinced Plaintiff that Cavusoglu was a worthy business partner. If Museoglu was present in Turkey when he made those convincing statements, Plaintiff's domestic injury argument would be even weaker than it already is.

Irrespective of Museoglu, the Court returns to the question of where the impact of Plaintiff's injury was felt. The Court finds that Plaintiff's injury was felt in the only place that it has ever been located, in Turkey. *See Devine*, 2017 WL 519066, at *20; *Ablyazov*, 2016 WL 7756629, at *7–8. Plaintiff, therefore, cannot allege a domestic injury to its business and Plaintiff's RICO claims must be dismissed.

## IV. CONCLUSION

For the reasons stated above, Sunrise Defendants' motion to dismiss is **GRANTED** and Plaintiff's RICO claims, Counts IV and V, are **DISMISSED WITH PREJUDICE**. An appropriate order follows.

*/s/ William J. Martini*
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: March 28, 2017**