**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **CEVDET AKSÜT OĞULLARI KOLL, STI,** | Civil Action No. 14-3362 (WJM) |
| Plaintiff, | |
| v. | |
| **ROBIN A. CAVUSOGLU,** *et al.*, | |
| Defendants. | **MEMORANDUM OPINION** |

**FALK, U.S.M.J.**

This case—*Cevdet Aksut III*—is the third in a family of cases Plaintiff has filed in an effort to collect payment for $1.1 million in apricots, figs, and pine nuts shipped by Cevdet to HGC Commodities Corporation, an entity controlled by Defendant Huseyin Cavusoglu.[1] In general, *Cevdet Aksut III* arises from information Plaintiff discovered in collection proceedings related to a judgment entered in *Cevdet Aksut I* and in discovery in *Cevdet Aksut II*. In *Cevdet Aksut III*, Plaintiff has attempted to collect its judgment against Cavusoglu's wife, various corporations that Cavusoglu and his wife wholly owned and controlled, and other parties to whom the Defendant in *Cevdet Aksut I* (HGC Corporation) transferred assets during the months of negotiations

---

[1] *Cevdet Aksut I* is Civil Action No. 10-2750. *Cevdet Aksut II* is Civil Action No. 12-2899. Both cases are now closed.

before the signing of the *Cevdet Aksut I* settlement agreement.  The basic allegation is that the defendants in *Cevdet Aksut III* conspired with Cavusoglu to defraud Cevdet Aksut.[2]

Before the Court is Plaintiff's motion to "(I) compel discovery and (II) extend the discovery period." [ECF No. 154.]  The motion is heavily opposed by all Defendants, who contend the request is untimely and made only after the close of discovery and on the eve of dispositive motion practice.  [ECF Nos. 152-155.]  For the reasons stated below, Plaintiff's motion is **DENIED**.

## RELEVANT BACKGROUND

The background of this case and the related matters spans years and is convoluted.  This section is limited to the background related to Plaintiff's request to extend the discovery period and to compel, and any other relevant details.  Further discussion of the claims and issues in the cases can be found in many prior opinions.

*Cevdet Aksut III* was filed on May 28, 2014.  At the time that the case was filed, *Cevdet Aksut II* was still active and quite contentious.  Indeed, the Undersigned held 19

---

2 The various Defendants have been described by the parties as (1) "the Sunrise Defendants," comprised of American Pistachio Commodities Corp d/b/a Sunrise Commodities; David Cottam; and Andrew Rosen; (2) "the Cavusoglu Defendants," comprised of Defendants Huseyin Cavusoglu, Robin Cavusoglu, various entities alleged to have been owned by the Cavusoglus, and the Cavusoglu children; (3) Hinckley Allen & Synder LLP, the law firm that represented Cavusoglu in *Cevdet I*; and (4) Mordy Dicker, an individual allegedly involved in the ownership and management of the Sunrise Defendants.

conferences in *Cevdet Aksut II*, most of which were related to discovery problems. And this motion cannot be placed in proper context without considering the ongoing discovery issues in *Cevdet Aksut II*.

For example, on October 30, 2013, I described the then-ongoing proceedings in *Cevdet Aksut II* as follows:

> THE COURT: The case has a tortured history. This is a case in which I issued scheduling orders and the scheduling orders were – ran and no one did anything.
> \* \* \*
> [I]t tells a tale of failure to comply with the discovery rules of this court, failure to comply with the guidelines for litigation conduct, and several other problems.

(Transcript of Proceedings, October 30, 2013, at 2:13-16; 3:24-4:2 (attached to the Declaration of Lindsey Taylor ("Taylor Decl.") at Exhibit H).)

And again in December 2013:

> THE COURT: All right. This call follows an off-the-record telephone call that we had this morning . . . . [T]he transcript of that proceeding begins with the statement that I told you on the phone this morning, that I think that this case has a tortured history and reflects flagrant abuse of the discovery process, abuse of the Court's orders . . . .
> . . .
>
> But in any event, the fact of the matter is time and time again, the parties have failed to comply with court orders, have failed to appear, have failed to do what was required on the most basic discovery issues . . . . And I want the parties to take this seriously. I'm absolutely shocked at the moment. And I want to make sure that – this level of – of displeasure is made aware to any other court that views or considers this matter.

(Transcript of Proceedings, December 4, 2013, at 3:16 to 4:7; 4:16-25 (Taylor Decl., at Exhibit I) (emphasis added).)

Against the backdrop of widespread non-compliance with discovery orders in *Cevdet Aksut II*, the Undersigned entered an initial scheduling order in *Cevdet Aksut III* on May 25, 2016, expecting full compliance with the Order and with the Federal and Local Rules. Fact discovery opened immediately and was set to close on February 10, 2017. (*See* Scheduling Order dated May 25, 2016 ¶ 3; ECF No. 104.) The Scheduling Order specifically stated: "[s]ince all dates set forth herein are established with the assistance and knowledge of counsel, there will be no extensions except for good cause shown and by leave of Court, even if the parties consent." (*Id.* at ¶ 16.)

On March 8 and 10, 2017, after the close of discovery, the Sunrise Defendants and Hinckley Allen submitted letters requesting leave to file motions for summary judgment.[3] In response, the Undersigned scheduled a telephone conference on March 15, 2017.

On the morning of the March 15 conference, Plaintiff filed a 43-page submission, claiming that various items of discovery were outstanding and opposing Defendants' request to file summary judgment motions.

By letter dated March 17, 2017, I addressed Plaintiff's last-minute filing:

Dear Litigants:

---

[3] At that time, the Sunrise Defendants and Dicker had a pending Rule 12© motion for judgment on the pleadings seeking to dismiss Plaintiff's federal and state RICO claims. Although the parties may have discussed the issue amongst themselves, no party requested that the Court stay discovery on any issue while the motion was pending, and no such stay was entered. On March 28, 2017, Judge Martini granted Defendants' motion.

> . . .
>
> At the conclusion of the [March 15] conference, the Court advised counsel that it would review the last minute filing and respond. Having reviewed Plaintiff's letter, it appears that Plaintiff's request to engage in discovery is substantially out of time. Discovery opened in May 2016. It closed February 10, 2017. The case is already three years old. The alleged discovery disputes contained in Plaintiff's letter date back months, and were never raised or even hinted at prior to March 15, although the Court had several conferences before then. Defendants contend that Plaintiff has waived any discovery issues by failing to raise them prior to the close of discovery.
>
> No reason was given for the failure to timely raise these disputes in accordance with Local Civil Rule 37.1. However, if Plaintiff would like to pursue this further, it may file a formal motion seeking relief from the scheduling order and to re-open discovery. Absent the filing of such a motion in the next ten (10) days, the Court will enter an order scheduling summary judgment motion practice.

[ECF No. 144.]

On March 28, 2017, Plaintiff filed the present motion to "[I] compel discovery and [II] extend the discovery period."[4]

---

4 Despite the Court's letter permitting Plaintiff to move—if it wished—to seek "relief from the scheduling order and to re-open discovery," Plaintiff filed a motion that seeks to *compel* discovery and argues about whether certain discovery requests seek relevant information and whether Defendants' objections to same are reasonable. This is inappropriate and violates the Scheduling Order, the March 17 letter, and the Local Rules relating to the informal presentation of discovery disputes. *See* Scheduling Order ¶¶ 9-10; L. Civ. R. 37.1. Moreover, Defendants opposition states that the parties did not meet-and-confer on many of discovery requests that Plaintiff included in its motion to compel because Plaintiff simply accepted their responses and failed to diligently pursue further information. The Court will only consider whether the discovery period should be re-opened and extended. Plaintiff's request to compel was made without leave and after the close of discovery and without sufficiently

On April 17, 2017, Defendants filed three separate oppositions to the motion to compel and reopen, which argue that Plaintiff simply failed to engage in discovery; that no good cause has been shown to extend the discovery period; that much of the discovery sought was directed to the now-dismissed RICO claims; and that they should be permitted to move for summary judgment.

On April 27, 2017, Plaintiff requested permission to file a reply brief, which it attached to the request.[5][6]

---

conferring with adversary counsel as required by the Local Rules. Moreover, case law is extensive and clear that a party must move to compel discovery prior to the close of the discovery period or the right to seek such information may be waived. *See, e.g., Days Inn Worldwide v. Sonia Investments,* 237 F.R.D. 395, 397 (N.D. Tex. 2006) (collecting extensive case law and citing 18 cases to the effect with parentheticals, including case law from five separate court of appeals).

5  The request is granted, and the Court has considered Plaintiff's reply brief

6  The Court has for some time abstained from deciding this motion because Plaintiff filed a Notice of Appeal to the United States Court of Appeals for the Third Circuit from Judge Martini's Opinion and Order entered on March 28, 2017, *see* footnote 3, *supra*. A notice of appeal generally divests the district court of jurisdiction over aspects of the case under appeal. *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). However, the filing of a premature notice of appeal does not deprive the district court of jurisdiction. *See, e.g., Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1314 (3d Cir. 1994). And here, Plaintiff's appeal is from the grant of a partial dismissal motion and would appear to be premature. To that end, the Third Circuit has issued a briefing notice questioning jurisdiction over the appeal. Moreover, the issue that is the subject of this opinion—whether an extension of the discovery period is appropriate—is clearly separate from the issue on appeal—Judge Martini's dismissal of federal and state RICO claims—meaning that the Court retains jurisdiction over the discovery issue regardless of whether Plaintiff's appeal is premature. *Liberty Mut. Ins. Co. v. Gunderson*, 387 Fed. Appx. 480, 486 (5th Cir. 2010) ("Where the order on appeal does not dispose of the entire case, however, the district court may still proceed with matters not involved with the appeal.")

Given the age of the case and the need to move the proceedings forward, and

## **LEGAL STANDARD**

The Court's Scheduling Order closed fact discovery on February 10, 2017. Federal Rule of Civil Procedure 16(b)(4) provides that "a schedule may be modified only for good cause and with the judge's consent." *Id*. Rule 16 vests the Court with broad discretion to control and manage discovery. *See, e.g., Newton v. A.C. & Sons, Inc.*, 918 F.2d 1121, 1126 (3d Cir. 1990) ("The intent and spirt of Rule 16 is to allow courts to actively manage the timetable of case preparation."); *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817 (3d Cir. 1982) ("We will not upset a district court's conduct of discovery procedures absent a demonstration that the court's actions made it impossible to obtain crucial evidence, and implicit in such a showing is proof that more diligent discovery was impossible."). To establish "good cause," the party seeking to alter a schedule must show that the deadlines in an order "cannot reasonably be met despite the diligence of the party seeking the extension." *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 469 (D.N.J. 1990); *see also Rearick v. Penn. State Univ.*, 416 Fed. Appx. 223, 225 (3d Cir. 2011).

The good cause standard is "not a low threshold." *J.G. v. C.M.*, 2014 U.S. Dist. LEXIS 56143, at *4 (D.N.J. Apr. 23, 2014) (Martini, J.). And a scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by

---

because the issue being appealed is separate from the discovery issue herein, the Court is satisfied that it retains jurisdiction to decide the present motion. *See, e.g.*, *Mondow v. Fountain House*, 867 F.2d 798, 800 (3d Cir. 1989); *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 233 (5th Cir. 2009).

counsel without peril." *Johnson v. Mammoth Rec. Inc.,* 975 F.2d 604, 610 (9th Cir. 1992); *see also Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 1992 U.S. Dist. LEXIS 11692 (D.N.J. July 20, 1992). As a result, permitting discovery extensions in the absence of good cause would "deprive the trial judges of the ability to effectively manage the cases on their overcrowded dockets." *Koplove v. Ford Motor Corp.*, 795 F. 2d 15, 18 (3d Cir. 1986). In short, counsel must diligently pursue discovery and, if it is realized that there will be a need for an extension, pursue any extension within the discovery period, the rules, and prior to the expiration of dates in the scheduling order:

> if the Rules are to mean anything, parties must diligently try to follow them and courts must enforce them, even if means that cases must sometimes be finally determined on procedural grounds rather than on their substantive merits. The purposes of the Rules is to provide litigants with a uniform set of procedures that will allow them to 'secure the just, speedy, and inexpensive determination' of their dispute. *See* Fed. R. Civ. P. 1. Litigants and their lawyers are entitled to rely on the assumption that all the other litigants and lawyers are operating under the same set of rules and will be held accountable by the courts for noncompliance. If courts consistently ignore or excuse flagrant violations of the Rules, the Rules will be rendered illusory and the whole federal judicial system will become riddled with uncertainty, inconsistency, and delay. Litigants and their attorneys must diligently attempt to follow the Rules, regardless of whether it is convenient or desirable.

*Mused v. United States Dep't of Agric. Food & Nut. Serv.*, 169 F.R.D. 28, 25 (W.D.N.Y. 1996); *see also Dag Enterprises, Inc. v. Exxon Mobile Corp.*, 226 F.R.D. 95, 104-06 (D.D.C. 2005).

## **DECISION**

Plaintiff did not comply with the Court's scheduling order and did not diligently pursue any discovery issues with the Court. The Court heard nothing about any discovery issues for months, and not at all until a month after the discovery period closed. Nevertheless, Plaintiff has offered nine reasons why discovery should be reopened and extended. (Pl.'s Br. 11-13.) However, as is explained for each reason offered (in quotes) below, none of the reasons really explain or have anything to do with why Scheduling Order deadlines were not met and what good cause has been shown for the belated attempt to extend them.

First, "there has been no prior request to extend discovery." This is immaterial. The parties were provided 9 months to complete discovery in the case. The discovery end-date passed and no party requested an extension of discovery. Only when Defendants sought permission to file summary judgment motions did the issue of discovery arise. This is especially pertinent given the proceedings in *Cevdet Aksut II*, where the many lengthy hearings and failures to comply with Court Orders was repeatedly noted. In short, counsel was more than fairly on notice that Court Orders should be respected and would be enforced in this case. Plaintiff had nine months to conduct discovery, did not seek an extension during those nine months, and has not shown that the discovery he now seeks was otherwise unavailable or unattainable during the many months discovery was open. This does not amount to good cause. *See, e.g., LeBoon v. Lancaster Jewish Community Ctr. Ass'n*, 503 F.3d 217, 235 (3d

Cir. 2007) (affirming denial of motion to re-open discovery filed two months after close of extended discovery period); *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 505 n.7 (3d Cir. 1997).

Second, "Plaintiff has complied with all discovery requests served upon it by the numerous defendants and produced 6,000 documents." This does not amount to good cause to extend discovery. Plaintiff was obligated to respond to discovery served upon it and produce responsive documents when appropriate. Had it not responded to discovery and Defendants failed to pursue it, it would be Defendants that would be precluded from seeking additional discovery.

Third, "the relative complexity of the claims and defenses and issues raised herein." This is the third iteration of *Cevdet* litigation. Plaintiff is familiar with the claims and defenses. Moreover, when the Court provided the nine month discovery period, it was expressly stated in the Scheduling Order that "[s]ince all dates set forth herein are established with the assistance and knowledge of counsel, there will be no extensions except for good cause shown and by leave of Court, even if the parties consent." (Scheduling Order ¶ 16.) If nine months was insufficient, Plaintiff should have raised it at the time the schedule was set, and certainly before the discovery period closed.

Fourth, "the burden of complying with discovery obligations was far greater on the Plaintiff than it was on each individual defendant." Whatever burden was involved in responding to discovery requests was created by the nature of the pleading Plaintiff

10

decided to pursue. In any event, this argument does not establish the required "good cause."

     <u>Fifth</u>, "the substantial intervening motion practice concerning" the motion for partial dismissal of the RICO claims. Again, this is not good cause for a discovery extension. Defendants filed one brief running 15-pages in length seeking to dismiss two counts in the Complaint. Plaintiff filed a single response on December 5, 2016. The filing of one brief in the course of 9 months, and more than two months prior to the expiration of the discovery end-date, does not amount to good cause.

     <u>Sixth</u>, "the defendant's culpability in preventing the completion of discovery." The record does not support Plaintiff's contention that Defendants are "culpable" for the failure to timely raise discovery issues with the Court. Instead, the record reflects that both the Sunrise Defendants and Hinckley Allen responded to discovery requests with objections, including relevance and privilege objections. Plaintiff has the obligation to pursue further discovery if it feels it is being denied access to appropriate and discoverable information. That didn't happen in this case. The Court was not contacted or advised about any discovery issues until more than a month after discovery closed. The history of *Cevdet Aksut II* and the Court's admonitions should have put counsel on ample notice that compliance would be expected in this case. Good cause requires that the party seeking an extension show that the deadlines could not "reasonably be met despite the diligence of the party seeking the extension." *Harrison Beverage Co.*, 133 F.R.D. at 469. No such showing has been made.

Seventh, "unforseen and emergent conflicting client matters that engaged Plaintiff's counsel, including a federal bench trial . . . and the filing of two emergency Chapter 11 bankruptcy proceedings in the Southern District of New York." Plaintiff had the obligation to notify the Court that he had other pressing matters once it became apparent that he may not be able to meet the Scheduling Order deadline. *See, e.g.*, *Dag Enterprises, Inc.*, 226 F.R.D. at 104-06. That did not occur. Additionally, while the Court does not minimize other proceedings, it appears that the federal trial referenced was a one-day bench trial that occurred in the midst of a nine-month discovery period. (*See* Taylor Decl., Ex. F.)

Eighth, "the fact that Mr. Cavusoglu has admitted (in the 2012 action) that he spoliated critically relevant evidence to this case and that the only other source of that information is Sunrise, Hinckley Allen and Dicker." This may be true; however, it is not good cause to extend the schedule and excuse the delay.

Ninth, "Plaintiff's diligence and determination in successfully prosecuting the 2010 and 2012 actions to judgment after a jury trial cannot be questioned." True, however this does not establish good cause in this context.

## **CONCLUSION**

Discovery was open in this case for nine months. A scheduling order had been entered and compliance was expected, especially in light of the proceedings in the prior *Cevdet* cases. The discovery period closed without discovery issues being raised. More than a month after the close of discovery—and only in response to requests by Defendants to file dispositive motions—Plaintiff claimed that additional discovery was needed.

In light of the above, good cause for an extension of the discovery period has not been shown. Plaintiff's motion is **DENIED**.

                                            s/Mark Falk
                                            **MARK FALK**
                                            **United States Magistrate Judge**

**Dated: July 14, 2017**