UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CEVDET AKSÜT OĞULLARI KOLL. STI,**<br><br>Plaintiff,<br><br>v.<br><br>**ROBIN A. CAVUSOGLU**, *et al.*,<br><br>Defendants. | Civ. No. 2:14-3362<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Cevdet Aksüt Oğullari Koll. Sti ("Plaintiff") brings this action against Huseyin Cavusoglu and multiple associates, including the law firm of Hinckley Allen & Snyder LLP ("Hinckley Allen"), alleging thirteen counts of New Jersey, federal and common law violations, in connection with the fraudulent importation of food products from Turkey to the United States. This matter comes before the Court on Hinckley Allen's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Hinckley Allen's motion for summary judgment is **GRANTED** and all outstanding claims and cross-claims against it are **DISMISSED WITH PREJUDICE**.

**I.      BACKGROUND**

In general, the Complaint alleges that Hinckley Allen and others conspired with Defendant Cavusoglu in operating a fraudulent enterprise that induced Turkish food suppliers to ship their goods to Defendants for sale in the United States. Plaintiff seeks to collect an unpaid debt of approximately $1.1 million in connection with its business dealings with that enterprise. The Court assumes the parties' familiarity with the facts and procedural history of this case.

**A.      The Undisputed Facts of the Sunrise Settlement and Transfer**

The following facts are undisputed and specific to the portion of the case pertaining to Hinckley Allen's involvement in the alleged fraudulent scheme. The sole remaining claims against Hinckley Allen allege a violation of the New Jersey Uniform Fraudulent Transfer Act ("UFTA"), N.J.S.A. 25:2-20, civil conspiracy thereto, and a claim of

accounting. These claims arise out of Hinckley Allen's participation in the settlement of a legal dispute between another defendant in this case, American Pistachio Commodities Corp. d/b/a Sunrise Commodities ("Sunrise"), and two entities owned by Cavusoglu, Celil Ithalat Ihracat ("Celil") and CNC Trading Distribution and Warehousing, Inc. ("CNC"). *See* Ops., ECF Nos. 73 & 96.

On June 22, 2012, Celil filed a lawsuit in New Jersey Superior Court, alleging that Sunrise owed it $126,000 in connection with shipments of dried apricots. Hinckley Allen, along with local counsel, represented Celil in the litigation. *See* Decl. of K. Jordan-Price ("Jordan-Price Decl.") ¶ 8, ECF No. 170-3[1]; Ex. A, ECF No. 170-4; *see also* Pl.'s Counter-Statement of Undisputed Material Facts ("Pl.'s Counter-Statement") ¶ 6, ECF No. 181-1 ("Defendant's contentions are true only in the most literal, superficial and technical sense . . . ."). On November 8, 2012, the parties entered into mediation guided by a retired New Jersey judge, Thomas Olivieri of the firm Chasan Lamparello Mallon & Cappuzzo, PC. *Id*. ¶ 9. The parties ultimately agreed to settle the dispute for $500,000 (the "Sunrise Settlement"), which included the amount for the apricots and an additional $374,000 for damages sought by CNC related to packing machinery. *Id.* ¶ 10.

The settlement agreement provided Sunrise with a general release from all potential future claims by any Cavusoglu entities, including HGC Commodities ("HGC"). The agreement also called for Sunrise to wire the settlement amount to Hinckley Allen's trust account (the "Sunrise Transfer"). *Id*., Ex. B. Hinckley Allen received a total of $98,907.53 in legal fees for its representation of Cavusoglu in the Sunrise Settlement. *Id*. ¶ 13. Of the remaining amount, Hinckley Allen transferred $126,000 to Celil and $265,032.8 to CNC. *Id*. ¶ 14. These transfers form the basis of Plaintiff's remaining claims.

**B.    The Parties' Motions**

    1.   <u>Hinckley Allen's Summary Judgment Motion and Plaintiff's Opposition and Cross-Motion</u>

Hinckley Allen now moves for summary judgment against Plaintiff, arguing first that the Sunrise Transfer was not a transfer of an asset of a "debtor" as defined by the UFTA. *See* Br. of Def. in Supp. of Mot. for Summ. J. ("Def.'s Br.") 6–7, ECF No. 170-1. According to Hinckley Allen, the debtor vis-à-vis Plaintiff is HGC, which "did not transfer anything to anyone as part of the Sunrise Settlement." *Id*. at 7. Hinckley Allen next argues that it was not a "transferee" under the UFTA because it was the escrow agent of the Sunrise Transfer and it, therefore, never had dominion over the transferred asset. *See id*. at 7–8. Moreover, the money it received was for the reasonably equivalent value of its legal fees and, therefore, was not fraudulent. *Id*. at 8. Hinckley Allen further argues that the Court must dismiss Plaintiff's civil conspiracy claim because there is no actionable underlying tort to support it. *Id*. at 9. Finally, it argues that Plaintiff's claim for accounting

---

[1] For reasons set forth below, the Court considers Ms. Jordan-Price's Declaration as undisputed.

fails because there is no fiduciary relationship between it and Plaintiff, the Sunrise Settlement was not a complicated transaction and discovery has closed. *Id*. at 9–10.

Plaintiff opposes and cross-moves for summary judgment against Hinckley Allen. Plaintiff first argues that a debtor's lawyer can be liable for conspiracy to violate the UFTA under established New Jersey Supreme Court precedent. *See* Pl.'s Am. Br. in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") 9–11, ECF No. 181. Plaintiff points to this Court's "finding" in its opinion addressing Hinckley Allen's motion to dismiss as factual support from the record that Hinckley Allen plausibly knew of HGC's obligation to Plaintiff at the time of the Sunrise Settlement. *See id*. at 10–11. Plaintiff next argues that it has proven that the Sunrise Transfer was fraudulent because CNC had been dissolved for five years at the time of the Transfer and because Celil qualified as an "insider" under the UFTA. *See id*. at 16. Moreover, Plaintiff argues that Hinckley Allen's status as an escrow agent for the Transfer does not immunize it from liability because the UFTA does not protect bad-faith transferees. *See id*. at 18. Finally, Plaintiff argues that it has also proven its civil conspiracy claim because Hinckley Allen "had actual knowledge of the illegality and unlawfulness of the transfers it facilitated and effectuated . . . ." *Id*. at 20.

Hinckley Allen responds, submitting first that the facts it asserts in its Statement of Uncontested Material Facts ("Statement") are undisputed pursuant to Local Civil Rule 56.1 because Plaintiff failed to file a responsive statement. *See* Reply Br. of Def. in Further Supp. of Mot. for Summ. J. ("Def.'s Reply") 3, ECF No. 183. It further argues that Plaintiff may not rely on the Court's previous opinion addressing the motion to dismiss or its allegations related to its dismissed RICO claims to defeat summary judgment. *See id*. at 4–5. Finally, it contends that Plaintiff's theory that the Sunrise Settlement was a guise to cover Sunrise's actual debt to HGC lacks economic sense and defies the contradictory evidence in the record. *See id*. at 6–8.

2. <u>Plaintiff's Motion to Strike the Jordan-Price Declaration</u>

Plaintiff also moves to strike the Declaration of Kelley A. Jordan-Price, an attorney at Hinckley Allen who represented Cavusoglu and HGC in prior litigation against Plaintiff and in the Sunrise Settlement negotiations. *See* Pl.'s Opp'n at 20–21; Jordan-Price Decl. ¶¶ 1–2, 6–8. Plaintiff argues that the facts asserted in the Declaration constitute "(i) inadmissible hearsay and/or (ii) lack foundation or are made without any personal knowledge." Pl.'s Opp'n at 20. Plaintiff points to its Counter-Statement, where it argues that the Court should strike paragraphs 7–11 of the Declaration because Ms. Jordan-Price cannot testify as to Sunrise's view of the legal dispute that led to the Settlement, the nature and reason for Sunrise's payment and the allocations set forth in the settlement agreement because these topics constitute inadmissible hearsay. *See* Pl.'s Counter-Statement ¶ 11. Plaintiff further contends that Ms. Jordan-Price cannot testify about a CNC invoice because it is inadmissible hearsay and Hinckley Allen should have otherwise produced any such invoice during discovery. *Id*.

Hinckley Allen responds that Ms. Jordan-Price has personal knowledge of her representation of Cavusoglu during the Sunrise Settlement negotiations and Plaintiff's objections thereto are meritless. *See* Def.'s Reply at 5–6. Specifically, she has personal knowledge of the nature of the dispute between Cavusoglu's entities and Sunrise, including Sunrise's positions as communicated to her during discussions, which Hinckley Allen is not offering for the truth or merits of the underlying dispute. *See id*. at 6. She also has personal knowledge of the subject matter of the dispute, the documents exchanged between the parties and the final terms of the Sunrise Settlement. *See id*.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); s*ee Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

"Although the non-moving party receives the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving [*sic*] party must point to some evidence in the record that creates a genuine issue of material fact." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (citation omitted). "In this respect, summary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Id*. (citation omitted). "In addition, if the non-moving party has the burden of proof at trial, that party must set forth facts 'sufficient to establish the existence of an element essential to that party's case.'" *Id*. (quoting *Celotex*, 477 U.S. at 322).

## III. DISCUSSION

As a threshold matter, the Court finds that Plaintiff has not only failed to properly follow civil procedure in its filings, it has also utterly failed to conduct adequate discovery. The exhibits filed in connection with its opposition and cross-motion amount to the following: (1) the entire trial transcript from a previous trial involving Cavusoglu and his entities, to which none of the remaining defendants[2] were a party, *see* Decl. of S. Soulios ("Soulios Decl."), ECF No. 181-2, Ex. A, ECF Nos. 181-3–181-6; (2) some printouts of Hinckley Allen's firm website, *see id*., Exs. B & C, ECF Nos. 181-7 & 181-8; (3) a

---

[2] Sunrise, its principals and one former principal are the other remaining defendants. These parties have also filed for summary judgment and the Court will address their motions in a separate opinion.

judgment by confession in another litigation involving Cavusoglu, to which none of the remaining defendants were a party, *see id.*, Ex. D, ECF Nos. 181-9 & 181-10; and (4) responses to an information subpoena by HGC from that same litigation, which was prepared and submitted by Ms. Jordan-Price, *see id.*, Ex. E, ECF No. 181-11.

In addition, Plaintiff apparently expects this Court to refer back to the myriad exhibits it filed in connection with its Complaint, which this Court finds to be an indiscernible "document dump," and to which Plaintiff makes no coherent or consistent method of citation thereto in its filings. After a significant effort to make sense of it, the Court will not waste anymore of its time. The parties bear the burden at summary judgment of marshaling the evidence and presenting it to the Court in an organized fashion. *See* Fed. R. Civ. P. 56(c). Absent such organization, a party proceeds at its own peril. *See* Fed. R. Civ. P. 56(e)(2); *Caban Hernandez v. Philip Morris USA, Inc.*, 486 F.3d 1, 7 (1st Cir. 2007) ("Given the vital purpose that such rules serve, litigants ignore them at their peril.").

The Court further addresses Plaintiff's shortcomings in more detail below. Ultimately, however, it is not Plaintiff's disorganized and sloppy briefing that is fatal to its case; it is Plaintiff's failure to develop *any facts during discovery that are relevant to the instant case* that requires this Court to grant summary judgment in favor of Hinckley Allen.

### A. Plaintiff Failed to Comply with Rule 56(c) and Local Rule 56.1(a)

Rule 56(c)(1)(A) provides that any party asserting that a fact is or is not in dispute must support that assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials." If a party fails to follow Rule 56(c), courts may "(1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order." Fed. R. Civ. P. 56(e).

Local Civil Rule 56.1(a) supplements the federal rules. It provides, in pertinent part:

> The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and *citing to the affidavits and other documents submitted in connection with the motion*; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion. In addition, the opponent may also furnish a supplemental statement of disputed material facts, in separately numbered paragraphs citing to the affidavits and other documents submitted in connection with the motion, if necessary to substantiate the factual basis for opposition. . . . Each statement of material

facts shall be a separate document (not part of a brief) and *shall not contain legal argument or conclusions of law*.

*See* Local Civ. R. 56.1(a) (emphasis added). "Merely stating in the opposition papers that the non-movant disputes in general many of the facts put forward by the movant, without identifying the facts disputed and without pointing to evidence in the record that raises an issue of fact regarding that point, is insufficient to survive summary judgment." *Malik v. Hannah*, 799 F. Supp. 2d 355, 358 (D.N.J. 2011). Failure to comply with Local Rule 56.1 is not fatal in and of itself. *See Boswell v. Eoon*, 452 F. App'x 107, 111–12 (3d Cir. 2011). Nonetheless, courts may deem certain facts as undisputed where a party fails to make specific citations to evidence in the record. Fed. R. Civ. P. 56(e)(2).

Plaintiff failed to comply with both the federal and local rule. First, Plaintiff failed to file a responsive statement to Hinckley Allen's Statement as required by Local Rule 56.1(a). Instead, Plaintiff filed its Counter-Statement, which the rule permits *in addition to*, but not as a substitute for, the responsive statement. In its Counter-Statement, Plaintiff both disputes certain facts in Hinckley Allen's Statement and makes several factual assertions of its own. The Third Circuit instructs, "[T]he purpose of certain district court local rules pertaining to motions is the facilitation of the court's disposition of motions, not punishment." *See Boswell*, 452 F. App'x at 111. In light of this instruction, the Court will consider properly disputed facts in Plaintiff's Counter-Statement as its response to Hinckley Allen's Statement.

Second, the Counter-Statement contains numerous instances of impermissible legal argument, which the Court will ignore. *See, e.g.*, Counter-Statement ¶¶ 15, 23, 31, 50–53. Third, Plaintiff's Counter-Statement contains numerous instances of purported factual statements with no citation to the record of any kind. *See, e.g.*, *id*. ¶¶ 14, 16, 19, 21, 28–30, 32–34, 49. In several other instances, Plaintiff's factual statements contain citations to exhibits purportedly filed with the Complaint, but which are either mislabeled or altogether nonexistent. *See, e.g.*, *id*. ¶¶ 12, 18, 24–26, 46–48.[3] Accordingly, the Court ignores every instance of Plaintiff's statements meeting the above descriptions. Moreover, where such deficient statements purport to dispute factual assertions made by Hinckley Allen in its Statement, the Court considers Hinckley Allen's assertions as undisputed.

### B. The Jordan-Price Declaration is Permissible in Support of a Summary Judgment Motion

Rule 56(c)(4) expressly provides for the filing of a declaration in support of a summary judgment motion, provided that the declarant has personal knowledge of the

---

[3] For example, Plaintiff repeatedly cites to "Exhibit 3 to Soulios Complaint," which is apparently a transcript of a deposition of Cavusoglu taken in December 2011, in connection with a prior litigation. There is no document labeled "Exhibit 3" in the hundreds of pages of exhibits attached to the Complaint. Likewise, Plaintiff cites to exhibits numbered 9, 10, 15, 16, 17, and 18, apparently referring to other exhibits filed with the Complaint. The Court found a document numbered 18 (as well as 20–26), but the others are not labeled or do not exist.

subject matter, sets out facts that would be admissible in evidence, and shows that she is competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4). As mentioned above, Ms. Jordan-Price served as Cavusoglu's counsel in the Sunrise Settlement negotiations. She certainly has personal knowledge of what transpired during those negotiations and the agreement reached thereafter. The Court does not find anything in paragraphs 7–11 to which she could not credibly testify. Furthermore, as will be explored more fully below, Plaintiff could have deposed Ms. Jordan-Price, subpoenaed her relevant emails, or undertaken numerous other measures if it had wanted to develop an evidentiary record to contradict her statements. Plaintiff did not. Accordingly, Plaintiff's motion to strike is **DENIED**. The Court further finds the Jordan-Price Declaration to be undisputed.

### C. Plaintiff's Remaining Claims Are Unsupported by the Facts in the Record

Finally, the Court addresses the substance of Plaintiff's remaining claims. As an initial matter, the Court notes that Plaintiff did not contest Hinckley Allen's argument for dismissal of the claim for an accounting. Plaintiff, therefore, has abandoned this claim. *See Daughtry v. Family Dollar Stores, Inc.*, No. 09-cv-5111, 2011 WL 601270, at *8 (D.N.J. Feb. 16, 2011) (granting summary judgment for defendant on a claim where plaintiff did not respond to defendant's argument). Accordingly, the Court **GRANTS** summary judgment for Hinckley Allen over Plaintiff's accounting claim and it is **DISMISSED WITH PREJUDICE**.

Plaintiff's argument concerning its remaining two claims of fraudulent transfer and conspiracy thereto essentially boils down to guilt by association. In sum, Plaintiff wants this Court to grant it summary judgment because Hinckley Allen represented Cavusoglu in prior litigations, which necessarily means that Hinckley Allen knew of Cavusoglu's fraudulent conduct and debt to Plaintiff at the time it negotiated and finalized the Sunrise Settlement. Plaintiff submits *no evidence* developed during discovery in the instant case; all of its exhibits emanate from prior litigations, to which Hinckley Allen was not a party. No one disputes that Cavusoglu is a fraud. That fact, however, does not automatically transfer liability to his counsel without much more, which Plaintiff failed to provide.

### 1. Plaintiff's reliance on the Court's "findings" from its previous opinions addressing motions to dismiss confuses the legal standards applicable to Rules 12 and 56.

Plaintiff repeatedly cites to the Court's previous "findings" from its July 14, 2015 opinion addressing Hinckley Allen's motion to dismiss. *See* Pl.'s Opp'n at 9–11. Plaintiff inexcusably overlooks the legal standard of a Rule 12 motion. In deciding a Rule 12 motion, the Court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998). Thus, in reviewing Hinckley Allen's motion to dismiss, the Court *was obligated to assume* that all of the factual allegations in Plaintiff's complaint were true. At no point, however, did the Court make a determination

that any of Plaintiff's allegations were *actually true*. The Court merely found that Plaintiff's allegations *were plausible*, which is a far cry from an actual finding of fact.

The Court's standard of review on a Rule 56 motion is quite different. As stated above, *supra* Part II, the Court considers whether there is a genuine dispute as to a material fact and considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. That inference, however, does not absolve Plaintiff from having to establish a genuine dispute from facts developed in the record. *Colkitt*, 455 F.3d at 201. Moreover, Plaintiff bears the ultimate burden of proof here, which requires that it establish facts in the record "'sufficient to establish the existence of an element essential to [its] case.'" *Id.* (quoting *Celotex*, 477 U.S. at 322).

The Court's previous opinion rendered under a wholly separate legal standard has no bearing to the instant motion. Consequently, the Court will disregard all references to its "findings" from its July 2015 opinion.

### 2. Plaintiff erroneously relies on prior legal proceedings that have no relevance to the instant case.

Plaintiff also references two prior litigations involving entities owned by Cavusoglu, *Fentex Int'l Corp. v. Cavusoglu, et al.* and *Holsa Inc. v. Cavusoglu*. *See* Counter-Statement ¶¶ 1–5. Those legal actions purportedly show Hinckley Allen's knowledge of Cavusoglu's fraudulent nature at the time of the Sunrise Transfer, which necessarily means that the Transfer itself was fraudulent and Hinckley Allen was a witting participant. *See* Pl.'s Opp'n at 2–4. Plaintiff is mistaken as to what is relevant here.

At best, those prior actions might help to establish a pattern of behavior by Cavusoglu, from which a fact-finder might find, with much more, a RICO enterprise. The Court, however, previously dismissed Plaintiff's RICO claims. The only remaining transaction before the Court is the Sunrise Transfer, to which these actions have no relevance whatsoever.

Plaintiff also repeatedly cites to prior litigations before this Court related to the instant case, going so far as to attach an entire trial transcript from 2016. Soulios Decl., Ex. A. Those litigations involved HGC and Cavusoglu, which resulted in the Court awarding a $1.1 million judgment for Plaintiff. While Hinckley Allen represented Cavusoglu, it was not a party to those litigations and, therefore, had nothing to answer for during those proceedings. The Court will not impute guilt onto Hinckley Allen merely because it represented someone who is guilty of fraud. Those litigations have no relevance here.

### 3. Plaintiff has failed to develop the instant record with facts supporting the claims alleged in the complaint.

Plaintiff's claims essentially reduce to a charge that Hinckley Allen assisted Cavusoglu in fraudulently transferring the funds from the Sunrise Settlement away from Plaintiff's reach. Hinckley Allen's undisputed role was as the escrow agent for the

8

Transfer, which consisted of Sunrise wiring $500,000 to Celil and CNC via Hinckley Allen's trust account. Jordan-Price Decl. ¶¶ 13–14. From those funds, Hinckley Allen paid itself attorney fees for services rendered. *Id.* Clearly, Hinckley Allen was not a "debtor" in this transaction. The only questions before the Court are whether Hinckley Allen is liable for the alleged fraudulent transfer as a "transferee" under the UFTA and whether it was a conspirator. *See* N.J.S.A. 25:2-30.

The UFTA does not define the term "transferee." Hinckley Allen points to judicial interpretations of § 550 of the Bankruptcy Code as support for its definition that a transferee "must have dominion over the asset and have the right to use it for its own purposes." *See* Def.'s Br. at 7–8. The Court declines to adopt this definition; instead, it turns to the Appellate Division of the New Jersey Superior Court, which held that a law firm serving in the same capacity as Hinckley Allen was a transferee under the UFTA because it was "a person[] within the orbit of the statutory definition of transfer: . . ." *See Sun Nat'l Bank v. Visci*, No. A-0317-10T4, 2011 WL 2410238, at *3, 6–7 (N.J. Super. Ct. App. Div. June 8, 2011). More specifically, that court found that the law firm was a transferee for at least the amount that it received from the transfer in attorneys' fees. *See id.* at *7. The Court follows the *Visci* court's reasoning here and finds that, at a minimum, Hinckley Allen qualifies as a transferee for the amount it received in attorneys' fees: $98,907.53.

Notwithstanding the above, the UFTA states: "A transfer . . . is not voidable . . . against a person who took in good faith and for a reasonably equivalent value . . . ." *See* N.J.S.A. 25:2-30(a). Thus, Hinckley Allen is liable as a transferee only if it acted in bad faith. Plaintiff argues that Hinckley Allen's conspiracy with Cavusoglu constitutes its bad faith. *See* Pl.'s Opp'n at 16. New Jersey Supreme Court precedent holds that a debtor's lawyer may be liable as a conspirator under the UFTA. *See Banco Popular N.A. v. Gandi*, 876 A.2d 253, 263–64 (N.J. 2005). "A creditor asserting a claim against a conspirator must satisfy the agreement and knowledge aspects of civil conspiracy and all of the underlying components of a UFTA claim: An unwitting party may not be liable under a conspiracy theory." *Id.* at 263. Consequently, Hinckley Allen is only liable if it knew of Cavusoglu's fraudulent intent behind the Sunrise Transfer and agreed to help execute it.

Nothing in the record before the Court creates a genuine dispute as to a material fact over whether Hinckley Allen knew of and agreed to participate in a fraudulent transfer. Ms. Jordan-Price declares that the Sunrise Settlement was a legitimate resolution to a legal dispute, which did not involve HGC except for the general release from future liability given to Sunrise. *See* Jordan-Price Decl. ¶¶ 6–14. The fact that the parties subjected themselves to mediation conducted by a former New Jersey judge, a fact that Plaintiff does not dispute, greatly supports the Settlement's legitimacy. *See id.* ¶ 9. Ms. Jordan-Price further declares that the money Hinckley Allen received was the equivalent value for its services rendered. *See id.* ¶ 13.

Plaintiff purports to dispute these facts but it does not cite to a single deposition, a single interrogatory response, an affidavit or declaration from any witness or a single

document produced during discovery *in this case*. *See* Soulios Decl., Exs. A–E; Compl., ECF No. 1. Plaintiff's entire case relies on court filings made in previous cases where Hinckley Allen was not a party. While these filings were enough to create plausibility at the Rule 12 stage, they are plainly insufficient to continue the case at the Rule 56 stage.

"[W]here the party opposing a motion for summary judgment bears the ultimate burden of proof, the moving party may discharge its initial burden of showing that there is no genuine issue of material fact by "'showing'—that is, point out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Player v. Motiva Enters., LLC*, 240 F. App'x 513, 522 n.4 (3d Cir. 2007). Hinckley Allen correctly points out that nothing in the record supports the agreement and knowledge elements of Plaintiff's civil conspiracy claim and, by default, its UFTA claim. *See* Def.'s Reply at 9–10; Def.'s Resp. to Counterstatement of Material Facts ¶¶ 7–11, 14, 16–17, 19–20, 23–24, 28–34, 36, 39, 43, 46–48, 50–53, 55–58, 60–61, ECF No. 183-1.

It is Plaintiff's responsibility to prosecute its case. Plaintiff had nine months of open discovery, during which it could have sought the production of relevant documents, taken the depositions of key witnesses such as Ms. Jordan-Price or Mr. Olivieri, and undertaken numerous other measures. *See* Mem. Op. 9–12, ECF No. 160.[4] If Plaintiff did any of that, it does not cite to that evidence here; instead, it relies on a theory of guilt by association. Consequently, Plaintiff's opposition and cross-motion are woefully unsupported and insufficient to establish a genuine dispute as to any material fact. *See Colkitt*, 455 F.3d at 201 ("summary judgment is 'put up or shut up' time for the non-moving party"). Accordingly, Hinckley Allen's motion for summary judgment is **GRANTED** and Plaintiff's cross-motion is **DENIED**. All outstanding claims and cross-claims against Hinckley Allen are **DISMISSED WITH PREJUDICE**.

IV. **CONCLUSION**

For the reasons stated above, Hinckley Allen's motion for summary judgment is **GRANTED** and Plaintiff's cross-motion is **DENIED**. All outstanding claims and cross-claims against Hinckley Allen are **DISMISSED WITH PREJUDICE**. An appropriate order follows.

*/s/ William J. Martini*
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: January 19, 2018**

---

[4] On July 14, 2017, Magistrate Judge Falk denied Plaintiff's request to extend discovery, noting that Plaintiff failed to raise any discovery issues with him during the nine-month open discovery period and waited until a month after closure to seek an extension. ECF No. 160 at 9. Judge Falk further noted that none of the nine reasons given by Plaintiff in support of an extension amounted to good cause. *See id.* at 9–12.