UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CEVDET AKSÜT OĞULLARI KOLL. STI, <br><br> **Plaintiff,** <br><br> v. <br><br> ROBIN A. CAVUSOGLU, *et al.*, <br><br> **Defendants.** | Civ. No. 2:14-3362 <br><br> **OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Cevdet Aksüt Oğullari Koll. Sti ("Plaintiff") brings this action against Huseyin Cavusoglu and multiple associates, including Mordy Dicker, a former principal of American Pistachio Commodities Corporation d/b/a Sunrise Commodities ("Sunrise"), alleging thirteen counts of New Jersey, federal and common law violations, in connection with the fraudulent importation of food products from Turkey to the United States. This matter comes before the Court on Dicker's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Dicker's motion for summary judgment is **GRANTED** and all outstanding claims and cross-claims against him are **DISMISSED WITH PREJUDICE**.

I.  **BACKGROUND**

In general, the Complaint alleges that Dicker and others conspired with Cavusoglu in operating a fraudulent enterprise that induced Turkish food suppliers to ship their goods to Defendants for sale in the United States. Plaintiff seeks to collect an unpaid debt of approximately $1.1 million in connection with its business dealings with that enterprise. The Court assumes the parties' familiarity with the facts and procedural history of this case.

The following facts are undisputed. In the fall of 2009, Cavusoglu ordered shipments of Turkish dried apricots and pine nuts from Plaintiff valued at approximately $1,125,000. *See* Def.'s Statement of Material Facts Not in Genuine Dispute ("Def.'s Statement") ¶ 4, ECF No. 174-2; Pl.'s Resp. to Def.'s Statement of Material Facts ("Pl.'s Resp.") ¶ 1, ECF No. 190. Cavusoglu failed to pay Plaintiff any of the money he owed, which led Plaintiff to file suit against him and his company, HGC Commodities Corp. ("HGC"), in this Court. *See* Def.'s Statement ¶ 14; Pl.'s Resp. ¶ 2. In May 2011, the parties reached a settlement agreement, but HGC defaulted on its payments to Plaintiff

1

soon thereafter. Def.'s Statement ¶ 16; Pl.'s Resp. ¶ 3. The Court entered a judgment against HGC for $1,123,500 in July 2011. Def.'s Statement ¶ 17; Pl.'s Resp. ¶ 3.

In December 2011, Plaintiff deposed Cavusoglu as part of its judgment enforcement effort. In that deposition, Cavusoglu testified that Sunrise owed him $500,000. *See* Def.'s Statement ¶ 18; Pl.'s Resp. ¶ 3. He also testified to other purported facts, which gave rise to Plaintiff's second lawsuit against him for fraud. *See* Def.'s Statement ¶¶ 18, 20; Pl.'s Resp. ¶ 3. As part of that litigation, Cavusoglu stated that he sold all of Plaintiff's goods to Sunrise. *See* Def.'s Statement ¶ 21; Pl.'s Resp. ¶ 4. He also produced a settlement agreement between Sunrise, himself, his wife and several of his corporations, in which Sunrise agreed to pay him $500,000 to settle a dispute. *See* Def.'s Statement ¶ 24; Pl.'s Resp. ¶ 5. In January 2016, a jury returned a verdict of guilty against Cavusoglu for fraud. *See* Decl. of S. Reba in Supp. of the Mot. for Summ. J. ("Reba Decl."), Ex. G, ECF No. 174-6.

In May 2014, Plaintiff filed this action against multiple individuals and entities, including Cavusoglu, his family members and several of his corporations ("Cavusoglu Defendants", Sunrise and its two principals ("Sunrise Defendants"), the law firm Hinckley Allen & Snyder LLP, and Dicker. *See* Def.'s Statement ¶ 29; Pl.'s Resp. ¶ 6. Dicker was not an employee or otherwise affiliated with Sunrise in 2009 when Plaintiff contracted with Cavusoglu and HGC. *See* Def.'s Statement ¶ 39; Pl.'s Resp. ¶ 6. During his 2011 deposition, however, Cavusoglu testified that in 2005 Dicker advised him to close one of his businesses, CNC Warehousing and Distribution ("CNC"), "to get rid of [his] debts." *See* Def.'s Statement ¶ 36; Pl.'s Resp. ¶ 8; Reba Decl., Ex. D, Cavusoglu Dep. 28:7–19.

Dicker now moves for summary judgment on the remaining four claims against him, which are: (1) violation of the New Jersey Uniform Fraudulent Transfer Act ("UFTA"), N.J.S.A. 25:2-20; (2) aiding and abetting fraud; (3) civil conspiracy; and (4) accounting. *See* Mem. of Law on Behalf of Def. Dicker's Mot. for Summ. J. ("Dicker's Mem.") 1, ECF No. 174-1. Dicker primarily argues that he cannot be held liable for any of the remaining claims against him because each requires that he "was aware of, and participated in, the actions which form the basis of the cause of action." *See id.* at 7. It is undisputed that Dicker left Sunrise in 2007 and it is further undisputed that the conduct giving rise to Plaintiff's cause of action occurred in 2009. *See id.* at 7–8. Consequently, Dicker had no knowledge of Cavusoglu's fraudulent conduct toward Plaintiff and the Court, therefore, should grant summary judgment in his favor. *See id.* 8–12.

Plaintiff opposes, arguing that the evidence in the record establishes a long-running fraudulent scheme, whereby Sunrise and Dicker supported the defrauding of Turkish food importers that resulted in illegal profits for all involved. *See* Pl.'s Br. in Opp'n to the Mot. for Summ. J. ("Pl.'s Opp'n") 2–6, ECF No. 189. Plaintiff repeatedly cites to its Complaint as supporting evidence of a conspiracy between Cavusoglu, Sunrise and Dicker. *See id.* 6–9. Plaintiff argues that there are material facts in dispute, most notably that Dicker's involvement with Sunrise and Cavusoglu prior to 2007 shows that he conspired with them in the fraudulent scheme, which became the proximate cause for Plaintiff's injury. *See id.*

at 10–13.  Plaintiff further argues that Dicker's departure from Sunrise in 2007 does not insulate him from liability as a conspirator because precedent holds that a conspirator may be liable for any act of any other conspirator made in furtherance of the conspiracy.  *See id*. at 13–14.  Finally, Plaintiff submits that the imputation doctrine bars summary judgment here because Dicker was both the principal and agent of his fellow conspirators.  *See id*. 14–15.  Dicker filed a reply, which primarily reiterates his original points.  *See* Reply Mem. of Law in Further Supp. of Mot. for Summ. J. ("Dicker's Reply"), ECF No. 193.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); s*ee Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp*., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  The Court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party.  *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

"Although the non-moving party receives the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving [*sic*] party must point to some evidence in the record that creates a genuine issue of material fact." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (citation omitted). "In this respect, summary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Id*. (citation omitted).  "In addition, if the non-moving party has the burden of proof at trial, that party must set forth facts 'sufficient to establish the existence of an element essential to that party's case.'"  *Id*. (quoting *Celotex*, 477 U.S. at 322).

## III. DISCUSSION

As an initial matter, the Court notes, as it previously has, that Plaintiff's citations to the Court's July 2015 opinion addressing Dicker's motion to dismiss do not constitute evidentiary support at summary judgment.  *See* Op. 7–8, Jan. 19, 2018, ECF No. 197.  The inferences that the Court *must* make from allegations in a complaint at the Rule 12 stage are wholly separate from the inferences a court makes based on evidentiary support *from the record* at the Rule 56 stage.  Accordingly, the Court disregards any reference to its prior opinion as *factual* support here.

Plaintiff's reference to prior litigations involving Cavusoglu and other Turkish food importers also have no bearing on the present dispute.  The Court dismissed Plaintiff's RICO claims in its March 2017 opinion and the only remaining claims are limited to the conduct that began in the fall of 2009.  *See* Op., Mar. 28, 2017, ECF No. 147.  The Court, therefore, disregards any reference to prior litigations in which Plaintiff was not a party.

Turning to the remaining claims, the Court first underscores Plaintiff's silence to Dicker's argument for dismissal of the claim for an accounting. The Court finds that Plaintiff has abandoned this claim. *See Daughtry v. Family Dollar Stores, Inc.*, No. 09-cv-5111, 2011 WL 601270, at *8 (D.N.J. Feb. 16, 2011) (granting summary judgment for defendant on a claim where plaintiff did not respond to defendant's argument). Accordingly, the Court **GRANTS** Dicker's motion as to the accounting claim and it is **DISMISSED WITH PREJUDICE**. With respect to the other three claims, the Court will briefly address each below, but it finds overall that these claims fail because there is no evidence in the record to support Dicker's knowledge of, and participation in, the fraudulent conduct from 2009.

### A. There Is No Evidence That Dicker Ever Had Knowledge of or Participated in a Fraudulent Transfer

The UFTA prohibits any transfer intended to hinder, delay, or defraud any creditor of the debtor. N.J.S.A. 25:2-25. The only alleged fraudulent transfer in the instant case is the $500,000 payment made by Sunrise to Cavusoglu as part of a settlement agreement in 2012. Plaintiff alleges that Sunrise and Cavusoglu conjured the settlement to create a means by which Sunrise could transfer the money to Cavusoglu in avoidance of his debt to Plaintiff. *See* Pl.'s Opp'n at 14. Consequently, Plaintiff maintains that Dicker is liable as a conspirator under the UFTA because the transfer was "well within the understanding and practice that Dicker had subscribed to and participated in." *Id*.

Plaintiff completely misapprehends what is required to establish a conspiracy to violate the UFTA. "A creditor asserting a claim against a conspirator must satisfy the agreement and knowledge aspects of civil conspiracy and all of the underlying components of a UFTA claim: An unwitting party may not be liable under a conspiracy theory." *Banco Popular N.A. v. Gandi*, 876 A.2d 253, 263 (N.J. 2005). It is undisputed that Dicker left Sunrise in 2007 and ceased all affiliation with it from that time forward. Plaintiff admits that it has no evidence showing Dicker's involvement with Sunrise or Cavusoglu at any point after April 2007. It further admits that it did not conduct any business with Cavusoglu at any point prior to April 2007. *See* Dicker's Statement ¶¶ 38–43; Pl.'s Resp. ¶ 10. Consequently, it is simply not possible that Dicker was aware of any plan to defraud Plaintiff and it, therefore, cannot establish the knowledge and agreement aspects of a UFTA conspiracy claim. Accordingly, the Court **GRANTS** Dicker's motion as to the UFTA claim and it is **DISMISSED WITH PREJUDICE**.

### B. There Is No Evidence That Dicker Ever Had Knowledge of the Act to Defraud Plaintiff

"The elements of aiding and abetting are: (1) the commission of a wrongful act; (2) knowledge of the act by the alleged aider-abettor; and (3) the aider-abettor knowingly and substantially participated in the wrong doing." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 415 (3d Cir. 2003). The wrongful act here is the defrauding of Plaintiff in 2009. Plaintiff maintains that Dicker was generally aware of Cavusoglu's fraudulent conduct directed at other Turkish importers prior to April 2007,

but that is not enough to establish aiding and abetting liability for Cavusoglu's conduct in 2009. *See N.J. Dep't of Treasury ex rel. McCormac v. Qwest Commc'ns Int'l, Inc.*, 904 A.2d 775, 783 (N.J. Super. Ct. App. Div. 2013) ("However, the 'mere common plan, design or even express agreement is not enough for liability in itself, and there must be acts of a tortious character in carrying it into execution.'" (quoting *Restatement (Second) of Torts* § 876(b) (1979))). As mentioned above, *supra* Part III.A., there is no evidence in the record that Dicker had any knowledge of Cavusoglu's dealings with Plaintiff in 2009. Consequently, Dicker cannot be liable as an aider and abettor of Cavusoglu's fraudulent conduct at that time. Accordingly, the Court **GRANTS** Dicker's motion as to the aiding and abetting claim and it is **DISMISSED WITH PREJUDICE**.

### C. There Is No Evidence That Dicker Agreed with Cavusoglu or Sunrise to Defraud Plaintiff

"There are four elements to the tort of civil conspiracy: (1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages." *Morganroth*, 331 F.3d at 414 (citation omitted). "[W]here fraud constitutes the 'standard operating procedure' of a business enterprise, 'affirmative action' sufficient to show withdrawal as a matter of law from the conspiracy embodied in the business association may be demonstrated by the retirement of a coconspirator from the business, severance of all ties to the business, and consequent deprivation to the remaining conspirator group of the services that constituted the retiree's contribution to the fraud." *United States v. Lowell*, 649 F.2d 950, 955 (3d Cir. 1981) (citations omitted).

Plaintiff cannot show that Dicker was a conspirator to the specific fraud committed against Plaintiff in 2009 because there is no evidence that he knew of Cavusoglu's business dealings at that time. Even if Dicker previously conspired to defraud other Turkish importers, however, he indisputably withdrew from that conspiracy when he separated from Sunrise and ceased all further contact in April 2007.[1] *See supra* Part III.A. Accordingly, the Court **GRANTS** Dicker's motion as to the civil conspiracy claim and it is **DISMISSED WITH PREJUDICE**.

### IV. CONCLUSION

For the reasons stated above, Dicker's motion for summary judgment is **GRANTED**. All outstanding claims and cross-claims against Dicker are **DISMISSED WITH PREJUDICE**. An appropriate order follows.

*/s/ William J. Martini*
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: January 29, 2018**

---

[1] The Court need not address Plaintiff's theory incorporating the imputation doctrine because Dicker withdrew from the alleged conspiracy.