# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CEVDET AKSÜT OĞULLARI KOLL. STI,** <br> **Plaintiff,** <br><br> v. <br><br> **ROBIN A. CAVUSOGLU,** *et al.*, <br> **Defendants.** | Civ. No. 2:14-3362 <br><br> **OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Cevdet Aksüt Oğullari Koll. Sti ("Plaintiff") brings this action against Huseyin Cavusoglu and multiple associates, including American Pistachio Commodities Corporation d/b/a Sunrise Commodities, David Cottam, and Andrew Rosen (collectively "Sunrise Defendants" or "Sunrise"), alleging thirteen counts of New Jersey, federal and common law violations, in connection with the fraudulent importation of food products from Turkey to the United States. This matter comes before the Court on Sunrise's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Sunrise's motion for summary judgment is **GRANTED** and all outstanding counts against Sunrise, Cottam and Rosen are **DISMISSED WITH PREJUDICE**.

## I.  BACKGROUND

The instant motion is the final of a trilogy of summary judgment motions filed by the remaining Defendants in this case. The Court previously granted summary judgment in favor of Defendants Hinckley Allen and Mordy Dicker. Op. ("Hinckley Op.") ECF No. 197; Op. ("Dicker Op."), ECF No. 200. Where appropriate, the Court incorporates those findings here. In general, the Complaint alleges that Sunrise and others conspired with Cavusoglu in operating a fraudulent enterprise that induced Turkish food suppliers to ship their goods to Defendants for sale in the United States. Plaintiff seeks to collect an unpaid debt of approximately $1.1 million in connection with its business dealings with that enterprise. The Court assumes the parties' familiarity with the facts of this case.

### A. The Undisputed Facts

The following facts are undisputed. In the fall of 2009, Cavusoglu, through his entity HGC Commodities Corp. ("HGC"), ordered shipments of Turkish dried apricots, figs and pine nuts from Plaintiff valued at approximately $1,125,000. Def.'s Statement of Undisputed Material Facts ("Def.'s Statement") ¶ 3, ECF No. 179-2; Pl.'s Resp. to Def.'s Statement ("Pl.'s Resp.") ¶ 1, ECF No. 194-1. HGC sold some of the commodities from that purchase to Sunrise. Def.'s Statement ¶¶ 4–5; Decl. of D. Cottam ("Cottam Decl.") ¶¶ 20–21, Ex. A, ECF Nos. 179-3 & 179-4. Cavusoglu failed to pay Plaintiff any of the money he owed, which led Plaintiff to file suit against him and HGC in this Court. In May 2011, the parties reached a settlement agreement, but HGC defaulted on its payments to Plaintiff soon thereafter. The Court entered a judgment against HGC for $1,123,500 in July 2011. Dicker Op. at 1.

In December 2011, Plaintiff deposed Cavusoglu as part of its judgment enforcement effort. In that deposition, Cavusoglu testified that Sunrise owed him $500,000. He also testified to other purported facts, which gave rise to Plaintiff's second lawsuit against him for fraud. As part of that litigation, Cavusoglu stated that he sold all of Plaintiff's goods to Sunrise. He also produced a settlement agreement between Sunrise, himself, his wife and several of his corporations, in which Sunrise agreed to pay him $500,000 to settle a dispute. In January 2016, a jury returned a verdict of guilty against Cavusoglu for fraud. In May 2014, Plaintiff filed this action against multiple individuals and entities, including Sunrise and its two principals, Cottam and Rosen. *Id*. at 2.

Sunrise maintains that Cavusoglu, through his various entities, provided several other services, including warehousing services, at Cavusoglu's Linden, New Jersey property. *See* Def.'s Statement ¶¶ 10–12.[1] Sunrise held the bulk of its inventory at the Linden property and, at times, it paid the rent and utilities on behalf of Cavusoglu to ensure uninterrupted access to its inventory. *Id*. ¶¶ 13–14. Sunrise offset these payments from invoices it received from Cavusoglu for other services rendered, such as trucking, handling and packaging. *Id*. ¶ 15; *see* Decl. of S. Soulios ("Soulios Decl."), Ex. B, Cavusoglu Dec. 2011 Dep. 26:1–12, ECF No. 194-4. Sunrise also underpaid certain invoices of commodities purchases to offset unexplained losses of its inventory at the Linden warehouse. Def.'s Statement ¶¶ 21–22.

On June 22, 2012, a Cavusoglu entity, Celil Ithalat Ihracat, filed a lawsuit in New Jersey Superior Court, alleging that Sunrise owed it $126,000 in connection with shipments of dried apricots. On November 8, 2012, the parties entered into mediation guided by a retired New Jersey judge, Thomas Olivieri of the firm Chasan Lamparello Mallon & Cappuzzo, PC. The parties ultimately agreed to settle the dispute for $500,000 (the

---

[1] Plaintiff purports to contest these and other paragraphs but it fails to adhere to Rule 56 and Local Rule 56.1. In addition, the Court has reviewed all of the exhibits Plaintiff cites to and finds that, more often than not, the citations do not support its contentions. As will be addressed in more detail below, the Court disregards Plaintiffs' statements that do not meet the proper standard and finds Sunrise's corresponding statements to be undisputed.

"Sunrise Settlement"), which included the amount for the apricots and an additional $374,000 for damages sought by another Cavusoglu entity, CNC Trading Distribution and Warehousing, Inc., related to packing machinery. The settlement agreement provided Sunrise with a general release from all potential future claims by any Cavusoglu entities, including HGC. Hinckley Op. at 2.

### B. The Parties' Arguments

Sunrise now moves for summary judgment on the remaining four claims against it: (1) violation of the New Jersey Uniform Fraudulent Transfer Act ("UFTA"), N.J.S.A. 25:2-20; (2) aiding and abetting fraud; (3) civil conspiracy; and (4) accounting. *See* Def.'s Mem. of Law in Supp. of Mot. for Summ. J. ("Def.'s Mem.") 7, ECF No. 179-1. Sunrise primarily argues that there is no evidence in the record that supports any of these claims. *See id*. at 7–9. Sunrise underscores the fact that Plaintiff did not take a single deposition during discovery. *Id*. at 7. Over six weeks after discovery closed, Plaintiff moved to have it reopened but Magistrate Judge Falk denied its request, a decision that Plaintiff did not appeal. *See id*.; ECF No. 160. Consequently, Sunrise argues that Plaintiff's claims fail "because Plaintiff has failed to present anything more than speculation and conjecture in support of its allegations." *See* Def.'s Mem. at 7.

Plaintiff opposes, resubmitting many of the same arguments it raised in opposition to Dicker's motion for summary judgment. *Compare* Pl.'s Br. in Opp'n to the Mot. for Summ. J. ("Pl.'s Opp'n") 2–6, *with* Dicker Op. at 2–3. Plaintiff argues that Sunrise engaged in a longstanding conspiracy with Cavusoglu to defraud Turkish food importers, including Plaintiff. *See* Pl.'s Opp'n at 2–9. In support of its conspiracy theory, Plaintiff relies almost entirely on court filings, exhibits, deposition transcripts, and trial testimony taken from prior litigations, to which Sunrise was not a party. *See* Soulios Decl., Exs. A–E, G–W. As it did in its opposition to Hinckley Allen's motion, Plaintiff also refers the Court's "findings" from its opinion addressing Sunrise's motion to dismiss. *See* Pl.'s Opp'n at 13. Ultimately, Plaintiff asks this Court to infer from the facts in the record that a material dispute exists as to the existence of a conspiracy and allow the case to go to trial. *See id*. at 14–16. Sunrise filed a reply, which mainly reiterates previous arguments and highlights Plaintiff's procedural deficiencies. *See* Def.'s Reply Br. in Supp. of Mot. for Summ. J., ECF No. 195.

### II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); s*ee Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp*., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The Court considers all

evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

"Although the non-moving party receives the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving [*sic*] party must point to some evidence in the record that creates a genuine issue of material fact." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (citation omitted). "In this respect, summary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Id*. (citation omitted). "In addition, if the non-moving party has the burden of proof at trial, that party must set forth facts 'sufficient to establish the existence of an element essential to that party's case.'" *Id*. (quoting *Celotex*, 477 U.S. at 322).

### III. DISCUSSION

As it did with Plaintiff's oppositions to the Hinckley and Dicker motions, the Court disregards all references by Plaintiff to the Court's "findings" from its July 2015 opinion addressing Sunrise's motion to dismiss. *See* Hinckley Op. at 7–8; Dicker Op. at 3. The Court also disregards Plaintiff's references to the *Fentex* and *Holsa* litigations as wholly irrelevant to the instant case. *See* Hinckley Op. at 8; Dicker Op. at 3. It further disregards all statements that do not conform to Rule 56 and Local 56.1, specifically statements and arguments lacking proper citation to evidentiary support in the record. *See* Hinckley Op. at 5–6.

While it has reviewed Plaintiff's exhibits, the Court notes that there is limited evidentiary value of testimony given in a prior litigation where Sunrise was not represented. The Court further finds that Cavusoglu's deposition and trial testimonies to be self-contradicting. *Compare* Soulios Decl., Ex. B, Cavusoglu 2011 Dep. 67:2–10, *with* Soulios Decl., Ex. R, Tr. 86:3–25, 119:5–13, Jan. 25, 2016. These contradictions coupled with Plaintiff's own characterization of Cavusoglu's prior testimony as false makes Plaintiff's reliance more puzzling. *See* Compl. ¶¶ 194–97, 217–31, ECF No. 1. As with Hinckley and Dicker, Plaintiff took *no* depositions in the instant matter. At a minimum, counsel should have deposed the two people Plaintiff alleges were Cavusoglu's co-conspirators, Cottam and Rosen. Counsel inexplicably failed to do so. In fact, as far as the Court can tell, Plaintiff issued one set of interrogatories, to which Sunrise responded, and it took no further action during the nine-month discovery period. *See* Soulios Decl., Ex. F. Plaintiff essentially rests its entire case on the prior testimony of someone who it submits is a fraud and a liar. Absent much more context from facts in the record, the Court finds that Cavusoglu's statements are unreliable and considers them with the appropriate weight.

In light of the above, the Court determines that there is nothing left in the record to support Plaintiff's remaining claims. The Court will briefly address each claim, but ultimately concludes that Plaintiff failed to prosecute its case, which warrants summary

judgment for Sunrise. First, the Court finds that Plaintiff has abandoned its accounting claim and it, therefore, is **DISMISSED WITH PREJUDICE**.

Second, the Court adopts its reasoning from its Hinckley opinion in dismissing Plaintiff's UFTA claim. Nothing in the record before the Court creates a genuine dispute as to a material fact over whether Sunrise knew of and agreed to participate in a fraudulent transfer. *See* Hinckley Op. at 9–10. Plaintiff's UFTA claim, therefore, is **DISMISSED WITH PREJUDICE**.

Third, Plaintiff's aiding and abetting fraud and civil conspiracy claims fail for similar reasons. "The elements of aiding and abetting are: (1) the commission of a wrongful act; (2) knowledge of the act by the alleged aider-abettor; and (3) the aider-abettor knowingly and substantially participated in the wrong doing." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 415 (3d Cir. 2003). "There are four elements to the tort of civil conspiracy: (1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages." *Id*. at 414 (citation omitted).

Defendants Cottam and Rosen produced declarations in lieu of deposition testimony, in which they declared that they purchased commodities from Cavusoglu but that they had no involvement with the inner workings of his entities and had no knowledge of how they operated internally. *See* Cottam Decl. ¶¶ 5–6, 30–31; Decl. of A. Rosen ("Rosen Decl.") ¶ 2, ECF No. 179-6.[2] They also provided plausible explanations for why Sunrise paid for the rent and utilities at the Linden property. *See* Cottam Decl. ¶¶ 3–8. In addition, they corroborate Hinckley's recitation of the facts surrounding the Sunrise Settlement, including the fact that the parties entered into mediation conducted by a former New Jersey judge to resolve their disputes. *Id*. ¶¶ 12–26.[3]

"[W]here the party opposing a motion for summary judgment bears the ultimate burden of proof, the moving party may discharge its initial burden of showing that there is no genuine issue of material fact by "'showing'—that is, point out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Player v. Motiva Enters., LLC*, 240 F. App'x 513, 522 n.4 (3d Cir. 2007). As was the case with Defendants Hinckley and Dicker, Sunrise has shown the Court the glaring absence of evidence in the record. Plaintiff has not produced a single piece of evidence to contradict any of these declarations. It had every opportunity to develop a factual record to counter Sunrise's position, but it chose not to. As the Third Circuit stated, "summary judgment is essentially 'put up or shut up' time for the non-moving party." *See Colkitt*, 455 F.3d at 201. Plaintiff has simply not put up. Accordingly, the Court **GRANTS** Sunrise's motion

---

[2] With the exception of two paragraphs, Rosen adopted the entirety of Cottam's declaration. Unless otherwise noted, the Court's citations to Cottam's declaration incorporates Rosen's declaration.

[3] Cottam attended the mediation but Rosen did not.

5

and Plaintiff's aiding and abetting and civil conspiracy claims are **DISMISSED WITH PREJUDICE**.

## IV. CONCLUSION

For the reasons stated above, Sunrise's motion for summary judgment is **GRANTED**. All outstanding counts in Plaintiff's complaint are **DISMISSED WITH PREJUDICE**. An appropriate order follows.

*/s/ William J. Martini*
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: January 29, 2018**